J. D. CONSTRUCTION CORP., A NEW JERSEY CORPO-
RATION; J. D. HOLDING CORP., A NEW JERSEY COR-
PORATION; AND JAMES D'AGOSTINO, INDIVIDUALLY,
PLAINTIFFS-APPELLANTS, v. SIDNEY ISAACS, DEFEND-
ANT-THIRD PARTY PLAINTIFF - RESPONDENT, AND
EUGENE AMRON, TOWNSHIP ENGINEER FOR THE
TOWNSHIP OF FREEHOLD, AND THE TOWNSHIP OF
FREEHOLD, A MUNICIPAL CORPORATION OF NEW
JERSEY, THIRD-PARTY DEFENDANTS.

Argued February 6, 1968—Decided March 4, 1968.

264

*Mr. John R. Halleran* argued the cause for plaintiffs-appellants (*Messrs. Giordano, Giordano & Halleran,* attorneys; *Mr. Halleran,* of counsel).

*Mr. Paul J. Feldman* argued the cause for defendant-respondent (*Mr. Charles Frankel,* attorney; *Mr. Feldman,* of counsel).

The opinion of the court was delivered

Per Curiam. The defendant moved to strike one count of an amended complaint, before answer filed, as failing upon its face to state a claim upon which relief can be granted, *R. R.* 4:12–2(e). The Law Division granted the motion as to certain allegations thereof and ordered plaintiffs to file and serve a further amended complaint deleting the stricken portions. The Appellate Division affirmed on plaintiffs' appeal from this interlocutory order, allowed by leave of the court. 95 *N. J. Super.* 122 (1967). We granted plaintiffs' petition for certification. 50 *N. J.* 290 (1967).

The primary issue projected in the lower tribunals, by the petition for certification and through the briefs of the parties here is an abstract one — whether an absolute privilege extends to any communication made to a municipal governing body by an objector to a variance recommendation before that body for final action under *N. J. S. A.* 40:55–39 (d), following a favorable referral by the Board of Adjustment. The question is presented in substantially a factual vacuum. All we have are the pleadings, quite vague in important particulars, with some slight factual augmentation allowed by the Appellate Division, plus some statements of counsel in oral argument which are incomplete and unconfirmed by any of the usual methods of establishing facts.

The background of the situation is clear enough. Plaintiffs are residential builders and developers. In 1964 the holding corporation sold a dwelling to defendant which had been newly built by the construction company (the individual plaintiff is the president of both corporations) in its Stonehurst development, located in Freehold Township, Monmouth County. After taking possession, defendant made complaints of structural defects. Some were remedied, but he remained dissatisfied and an acrimonious dispute developed, which grew into a community tempest, coming to involve other residents, the municipal governing body, the press and various courts as well.

The original complaint in this cause, filed in August 1965, represented one aspect of the controversy. It charged defendant, in three counts, with tortious interference with economic advantage and defamation of plaintiffs' professional reputation by reason of an alleged deliberate campaign of false and malicious statements to the township governing body, the press and individuals derogatory of plaintiffs' construction procedures and performances, which it was claimed were calculated to and did disrupt plaintiffs' completion of the development and sale of houses therein and injure their good names as builders. Defendant counterclaimed for damages asserted to result from alleged defects in his house and filed a third party complaint against the township engineer, and the township as his superior, for damages claimed to flow from the engineer's issuance of a certificate of occupancy for the house without, allegedly, having inspected the same.

Before the suit was reached for trial, plaintiff, upon leave granted, filed an "amended complaint" in April 1966, adding a fourth count, which is the subject matter of the present appeal. The count is actually supplemental rather than amendatory, for it only adds additional alleged tortious acts of defendant occurring after the filing of the original complaint, claimed to be in furtherance of his deliberate scheme to maliciously defame plaintiffs and interfere with their economic advantage. It first alleges, and there is no dispute as to this, that on March 1, 1966 the township Board of Adjustment recommended that the plaintiff holding company be granted a special use permit and variance to erect 48 units of multi-family garden-type apartments in its development and forwarded the recommendation to the township governing body for final action pursuant to *N. J. S. A.* 40:55–39(d). It then charges that defendant thereafter solicited other residents of the development to attend the township committee meeting, at which action would be taken, for the purpose of voicing frivolous objections and in other ways sought to create a hostile atmosphere and bring pres-

sure to bear upon certain members of the governing body to cause unfavorable action on the variance.

Then come the three vague paragraphs of the complaint, quoted in full by the Appellate Division, 95 *N. J. Super.*, at *p.* 126, setting forth alleged acts of the defendant at the governing body meeting on March 28, 1966. They represent the allegations of conduct which were the main object of defendant's motion to strike on the ground of absolute privilege. For present purposes they may be summarized as asserting that defendant, at the conclusion of the discussion of the matter by the governing body (without indicating the nature of the discussion), disrupted the meeting and presented the officials present with copies of "a letter" (in no way indentified or particularized), made "certain public statements" (also not particularized), and "permitted said letter to be read in full", which letter and statements maliciously and falsely characterized the holding company "as having acted wrongfully and improperly in connection with the application aforesaid" (again without any specification). A later paragraph asserts the admitted fact that the variance was disapproved at the meeting, allegedly because of defendant's statements. (We are advised that subsequent litigation between the holding company and the township upset this determination, at least in part).

The defendant sought no particularization by discovery before making his motion to strike and very little even informal light on the nature of the meeting or what really happened at it was shed at the motion hearing. The argument was essentially an abstract one, the defendant contending that, because the proceeding on the variance recommendation before the governing body was *quasi*-judicial in nature, absolute privilege was afforded to whatever he said or did there, on the basis of the decisions in *Rainier's Dairies v. Raritan Valley Farms, Inc.,* 19 *N. J.* 552 (1955), *Fenning v. S. G. Holding Corp.,* 47 *N. J. Super.* 110 (*App. Div.* 1957), and *Middlesex Concrete Products and Excavating Corporation v. Carteret Industrial Association,* 68

*N. J. Super.* 85 (*App. Div.* 1961). These cases held that the absolute privilege accorded to statements during judicial proceedings also applied to the communications there involved made in the course of certain *quasi*-judicial administrative proceedings or in connection with judicial proceedings. Plaintiffs urged that the principle of those decisions does not extend to the type of matter before the township committee here, stressing especially that defendant had no right to be heard thereon.

The judge did not look at the letter and the contents were not made known to him, nor was he advised of the nature of defendant's oral statements. As we read his ruling, his view that the letter was absolutely privileged seems to have been dictated solely by the fact that it was finally read aloud at the meeting by the clerk, with official approval, after some demand from those citizen members of the audience who were opposed to the variance. On the other hand, the court appeared to feel that, while defendant's acts took place "under *quasi*-judicial circumstances", he, as an objector, had no right to speak on the governing body's consideration of a variance recommendation, and so his oral statements at the meeting, whatever they may have been, were not shielded by privilege.

The slightly augmented record allowed by the Appellate Division, coupled with counsels' statements at oral argument before us, sufficiently establishes for present purposes that defendant's house was within 200 feet of the proposed garden apartments and so he was entitled to notice of the application to the Board of Adjustment (which he received) and the right to be .heard thereon before that body. *N. J. S. A.* 40:55–44. It further appears without dispute that, prior to the March 1st application to the Board, efforts were being made to settle all aspects of the controversy between plaintiffs and defendant. In this connection, the letter (included in the augmented record) presented by defendant and read at the meeting of the governing body was written. It ran to defendant from his attorney, advising. of the settlement nego-

tiations in progress and of the prospective variance application, and further said: "The corporation [plaintiffs] will expect no interference on your behalf on this application as a show of good faith in accordance with the terms of the settlement to be drawn up and approved by you, if such settlement is to be forth-coming". Consequently defendant did not appear before the Board of Adjustment as a party in interest to object to the variance.

It also appears that after the Board hearing and its transmittal of the recommendation to the governing body for final action, the settlement negotiations between plaintiffs and defendant collapsed and that at least one purpose of defendant's appearance before the governing body was to advance a contention that plaintiffs had tricked him into not appearing and objecting before the Board of Adjustment. The letter was at most only partly corroborative of such a contention and did not gain added significance simply because it was finally read aloud at the meeting.

 A governing body, in passing upon a recommendation for a subsection "d" variance (or with respect to a special exception where final authority to grant such uses is imposed by the ordinance in it, which seemingly was also involved here), acts in a *quasi*-judicial capacity and its action is subject to judicial review accordingly. Its determination must be reached upon the record made before the Board of Adjustment. While it may disagree with the Board's conclusions relating to the criteria imposed by the statute, *N. J. S. A.* 40:55–39, it may not base its determination on proofs not established before the agency. Appropriate too for presentation to the governing body are any contentions of irregularity in the proceedings before the Board which became known after the latter body had transmitted its recommendations, as, for example, defendant's contention in this case, and which, if established, might call for remand to the Board for corrective action there. While the governing body does not hold a trial-type hearing, it is now clear that it must deal with the matter at a public session, within the

sphere of the aspects open to it as above mentioned, and afford an applicant seeking the approval of a recommendation an opportunity to be heard. See *Reinauer Really Corp. v. Borough of Paramus,* 34 N. J. 406, *pp.* 415–419 (1961). We also agree with the Appellate Division (95 *N. J. Super.,* at *p.* 129) that an objecting party in interest likewise has the right to be heard within the same ambit, a right which apparently was denied to defendant here, at least at first. .

■ The nature of the rather limited issues before the governing body and the fact of a non-trial-type hearing in an essentially policital arena, sometimes highly charged with community feeling, can well, and we believe frequently do, lead to a meeting climate which can hardly be called *quasi-judicial*. The nature of any privilege to be afforded may depend on individual circumstances and the matter of pertinency and relevancy of remarks or contentions to the questions legitimately before the governing body may control. See generally *Prosser, Law of Torts, pp.* 796–800 (3rd ed. 1964) ; *cf.* 95 *N. J. Super.,* at *pp.* 131–132 and *Fenning v. S. G. Holdng Corp., supra* (47 *N. J. Super.,* at *pp.* 118-119). In this connection, as has been pointed out, we do not know, nor did either of the lower tribunals, what defendant said at the meeting. If he simply urged, for example, that he had been improperly dissuaded by plaintiffs from appearing and objecting on the merits before the Board of Adjustment and sought a remand to that agency so that he might be heard there and the application reconsidered, he would be presenting a pertinent consideration for the governing body's determination. It might be something else, however, if he sought to contend that the variance recommendation should be disapproved because the applicant's conduct toward him concerning the proposed settlement demonstrated general unworthiness to be allowed a variance or because the defendant's house was poorly built.

■ We are convinced that the policy question of whether an absolute privilege should be afforded to any communication made at such a hearing before a governing body,

involving the various considerations we have mentioned, ought not to be determined abstractly in a factual vacuum or merely on vague allegations in a complaint. We therefore are unwilling to consider the issue and believe that the trial court and the Appellate Division ought not to have accepted it either on the present inadequate record. *Cf. Rainier's Dairies v. Raritan Valley Farms, Inc., supra* (19 *N. J.*, at 563). We reserve our views on all expressions of the Appellate Division except to the limited extent we have indicated approval. Such expressions are of course also not to be considered binding upon the trial court, which will have to decide the basic question in the first instance after an appropriate record has been made.

The judgment of the Appellate Division and the order of the Law Division are reversed and vacated. No costs to any party in any court.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.