256 N.J. Super. 257 (1992)
606 A.2d 1113
JOHN POLLINGER, PLAINTIFF-RESPONDENT
v.
LARRY S. LOIGMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 1992.
Decided April 29, 1992.
*258 Before Judges KING, DREIER and GRUCCIO.
Larry S. Loigman, pro se argued the cause for appellant (Larry S. Loigman, on the brief).
Bernard M. Reilly argued the cause for respondent (Dowd & Reilly, attorneys; Bernard M. Reilly on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from the dismissal of his libel counterclaim. On June 25, 1990 defendant, an attorney practicing in Middletown Township, made allegedly defamatory statements *259 concerning plaintiff, at that time a sergeant in the Middletown Township police force. The statements were made at a public meeting of the Middletown Township Committee. Plaintiff, employing a private attorney, instituted a slander action against defendant. Defendant counterclaimed alleging that plaintiff had libeled him in a report of a police background investigation performed by plaintiff as part of plaintiff's official duties. Defendant had applied for an appointment as a Middletown Township police officer and had passed the competitive examination, placing fifth on a list of 29. The background investigation was required as part of the appointment process. The Township Administrator, as the appointing authority, removed defendant's name from the eligible list. The reasons given were "false statements on application, incomplete application, derogatory background investigation." Defendant appealed this action to the Merit System Board which sustained the Administrator's action. Defendant has appealed that decision to this court, and we have on this date affirmed the Merit System Board decision. Loigman v. Merit System Board, Docket No. A-3612-90T1. In the course of discovery in defendant's application to the Merit System Board to overturn his rejection, defendant received a copy of the background report prepared by Pollinger.
On June 25, 1990 the Middletown Township Committee was considering a proposed ordinance to establish procedures for assigning police officers to extra-duty traffic assignments on construction jobs. The officer in charge of the assignment process was Pollinger. During the public hearing on the proposed ordinance, Loigman criticized the ordinance and various actions of the Township Committee, called Pollinger "an inveterate liar," and further claimed that he would use the ordinance "to line the pockets of his friends." Pollinger's defamation action based upon these statements was dismissed by the trial judge (a different judge than the one who heard arguments *260 concerning the counterclaim).[1]
When the complaint was dismissed, Pollinger's attorney requested defendant to dismiss his counterclaim. This request was refused. Although plaintiff has argued that conditions of the refusal should be considered by us in appraising defendant's good faith, defendant's letter stating the conditions clearly noted that it was a settlement offer, the terms of which should be barred by Evid. R. 53. The Rule provides:
[e]vidence that a person has in compromise ... offered ... a sum of money or any other thing, act, or service in satisfaction of a claim, is inadmissible to prove the invalidity of the claim or any part of it....
If, however, any portion of the offer of compromise is relevant to an issue other than the validity of defendant's counterclaim, it may be considered. Rynar v. Lincoln Transit Co., Inc., 129 N.J.L. 525, 528-529, 30 A.2d 406 (E. & A. 1943).
Following the unsuccessful attempt to settle the claim, the Middletown Township attorney was substituted for Pollinger's personal attorney upon the determination by the Township that Pollinger's alleged liability was occasioned solely because of his official position. The trial judge dismissed the counterclaim, finding that Pollinger's statement in his report was absolutely privileged. The judge stated:
[Plaintiff's attorney] then quotes from the case of Erickson versus [v.] Marsh and McLennan, 117 N.J. 539, 563 [569 A.2d 793], (1990). And the language there, as far as this Court is concerned, is right on point which says that, although  a defamatory statement will not be actionable if it is subject to an *261 absolute or qualified privilege. A statement made in the course of judicial administrative or legislative proceedings is absolutely privilege and wholly immune from liability.
While we disagree with the reasoning of the trial judge, we determine that she reached the correct result.
In granting plaintiff's motion to dismiss the counterclaim, the trial judge further considered plaintiff's application for attorney's fees pursuant to the frivolous litigation statute, N.J.S.A. 2A:15-59.1. After considering the briefs and oral argument, the judge not only dismissed the counterclaim, but also awarded to plaintiff statutory counsel fees of $1,958.30.
The question before us is whether Sergeant Pollinger's report to the police chief and administrator should be accorded an absolute or a qualified privilege. Since Loigman has alleged that Pollinger's report was motivated by malice, the counterclaim could be dismissed only if the report was protected by an absolute privilege.
Generally, the Supreme Court has been reluctant to expand the circumstances to which it will extend absolute privileges. See Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 562-563, 569 A.2d 793 (1990) (qualified privilege to an employer who responds in good faith to the specific inquiries of a third-party concerning an employee's qualifications); Fees v. Trow, 105 N.J. 330, 338-339, 521 A.2d 824 (1987) (qualified privilege to statement of an employee in a State facility for the developmentally disabled reporting another employee's alleged abuse of a resident of the facility); Burke v. Deiner, 97 N.J. at 470-471, 479 A.2d 393 (qualified privilege for a statement made by a municipal official performing an administrative function; see also cases cited at 474-475, 479 A.2d 393); Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. at 562, 117 A.2d 889 (absolute privilege where statement has been made in a quasi-judicial administrative proceeding). In Burke v. Deiner, the Supreme Court distilled from the holdings of the several cases cited "that immunity varies in proportion to the nature of the official functions and the range of decisions that conceivably *262 might be taken in the exercise of those duties." 97 N.J. at 475, 479 A.2d 393. In that case, the municipal parking commissioners issued an allegedly defamatory resolution discharging the Authority's executive director. The Court determined that the Commissioners' privilege was a qualified one, but that the privilege had not been lost, since the record did not sustain a finding by clear and convincing proof that the Authority members either knew or had reason to question that the allegedly defamatory matters were false.
In Erickson, the Court declared that "[a] statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability." 117 N.J. at 563, 569 A.2d 793. This comment was quoted by the trial judge as authority that the administrative statement in the report issued by Pollinger was privileged. The judge's acceptance of this broad comment as binding on all administrative determinations, however, was a misinterpretation of Erickson. The Supreme Court's citation for the quoted comment was Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. at 558, 117 A.2d 889. In Rainier's the Court clearly applied the absolute privilege only to a quasi-judicial administrative proceeding. See also Fenning v. S.G. Holding Corp., 47 N.J. Super. 110, 117, 135 A.2d 346 (App.Div. 1957). In Fenning Chief Justice (then Judge) Hughes extended an absolute privilege to a quasi-judicial municipal administrative proceeding, there a hearing by the Essex County Rent Control Agency. Similarly, legislative bodies make quasi-judicial determinations, thus absolute immunity has also been accorded statements made before a municipal governing body hearing a zoning appeal. J.D. Constr. Corp. v. Isaacs, 51 N.J. 263, 271, 239 A.2d 657 (1968) (holding that the privilege is dependent upon the relevancy of the comments made to the proceedings before the body).
It is in that context that the Court in Erickson stated that statements "made in the course of judicial, administrative or legislative proceedings [are] absolutely privileged and wholly immune from liability." 117 N.J. at 563, 569 A.2d 793. This is *263 also made clear from the Court's citation of Fees v. Trow, supra. In Fees, the Court stated:
Because an absolute privilege protects even a maliciously-spoken untruth, it is provided only in the narrowest of instances, where the public interest in unfettered communication justifies the complete abrogation of the plaintiff's right of recovery for damaged reputation. Rogozinski v. Airstream by Angell, supra, 152 N.J. Super. 133 [377 A.2d 807 (Law Div. 1977)] (class of occasions in which publication of defamatory matters is absolutely privileged is confined within narrow limits, and courts as a rule have steadily refused to enlarge those limits); see also Devlin v. Greiner, 147 N.J. Super. 446, 456 [371 A.2d 380 Law Div.] (1977) (court will not lightly extend absolute privilege to new situations unless policy on which privilege is based is found to exist). Absolute immunity for example, has been reserved for statements during judicial proceedings and quasi-judicial administrative proceedings, J.D. Constr. Corp. v. Isaacs, 51 N.J. 263 [239 A.2d 657] (1968), as well as statements made in the legislature. N.J. Const. of 1947 art. IV, § 4, para. 9; Cole v. Richards, 108 N.J.L. 356, 357 [158 A. 466] (E. & A. 1932); F. Harper & F. James, The Law of Torts § 5.23 (2d ed. 1986). Official acts of the State as well as executive officers of the State have also been clothed with an absolute immunity. See Burke v. Deiner, 97 N.J. 465 [479 A.2d 393] (1984) (concluding that immunity varies in proportion to nature of official functions and range of decision-making discretion, and according qualified privilege to commissioners of municipal parking authority); In the Matter of the Hearing on Immunity for Ethics Complainants, 96 N.J. 669, 671 [477 A.2d 339] (1984) (upholding validity of Rule 1:20-11(b), which provides that a grievant in ethics matter or client in fee arbitration claim shall be absolutely immune from libel suit for testimony made in connection with ethics proceedings).
105 N.J. at 337, 521 A.2d 824.
It is hard to believe that after so carefully defining a strict class of situations in which absolute immunity is afforded, the Court in Erickson would by a single general statement extend such absolute immunity to all administrative or legislative proceedings. We therefore accept the Court's statement in Erickson as impliedly limited to those proceedings which are either judicial or quasi-judicial.
How then can we characterize the statements made by Pollinger to the Township Administrator insofar as they were relevant to defendant's civil service appointment as a police officer? We note that the appointing process was triggered by defendant's filing his application and passing the competitive examination. Thereupon an investigation was required by the *264 police chief, and an investigation report is by regulation available to the applicant. N.J.A.C. 4A:4-4.7(b)1.[2] As defendant's name was already on the eligible list, any proceeding to confirm defendant or remove his name would be adversarial in nature. Any action to remove his name from the list permitted defendant to have such action reviewed, eventually culminating in a review by the Merit Systems Board. N.J.A.C. 4A:4-6.6.[3] A written police evaluation such as the one before us, made available to the applicant, can thus be challenged in administrative hearings. Given this narrow scope of publication, this remedy is sufficient to protect the applicant from false or even malicious charges. A civil defamation action is unnecessary to provide plaintiff with remediation in these circumstances.
We determine that the statements filed during this process are in the nature of statements filed in a quasi-judicial administrative proceeding. At each level, be it before the appointing authority, the regional administrator, the director of county and municipal services (both of whom found for defendant), or the Merit System Board itself, a quasi-judicial decision was required concerning defendant's fitness to become a police officer. It was a requirement that defendant be given notice and an opportunity to be heard, albeit in writing, due process protections consonant with a quasi-judicial administrative review.
The fact that the disputed statement was not filed before the final authority, the Merit System Board itself, is irrelevant. In Devlin v. Greiner, 147 N.J. Super. 446, 371 A.2d *265 380 (Law Div. 1977), the court held that reports prepared even in contemplation of litigation must be scrutinized on a case-by-case basis. Id. at 460, 371 A.2d 380. If intimately connected with the proposed litigation, the reports are protected by an absolute privilege. Ibid. In the case before us, there is no question that this report was prepared so that the administrator could perform an adjudicatory function, the quasi-judicial matter of either confirming defendant as a qualified applicant for appointment as a police officer or removing his name from the qualified list. As such, the report was absolutely privileged.[4]
In a related area, the United States Supreme Court has sharply defined the distinction between the protection granted to a police officer's or a prosecutor's statement made in connection with a preliminary investigation, and the greater immunity afforded a statement made during a judicial proceeding. See Burns v. Reed, 500 U.S. ___, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); and see Cashen v. Spann, 66 N.J. 541, 334 A.2d 8 (1975), cert. denied, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 46 (1975). While it may appear anomalous here for Pollinger to have absolute immunity, while a police officer issuing a report in a criminal investigation will be given only qualified immunity, as noted earlier, Pollinger's report was part of a quasi-judicial administrative determination. *266 In contrast, in a criminal setting, an officer's pre-indictment statements are subject to a qualified privilege, because a judicial or quasi-judicial matter has not yet commenced.
We now turn to the award of counsel fees pursuant to the frivolous litigation statute, N.J.S.A. 2A:15-59.1. The bases for the entry of such an order are two-fold. N.J.S.A. 2A:15-59.1b(1) authorizes such fees if
the complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury.
Subsection (2) similarly provides for fees if the non-prevailing party knew or shown have known that the claim was made "without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1b(2). As we have noted in our review of the law, the legal question before the trial court was at least subject to some speculation. Therefore, N.J.S.A. 2A:15-59.1(b)(2) was inapplicable. However, the trial judge determined the case not on subsection (2), but rather subsection (1). In discussing the statute she stated that
the language there says that a party can be entitled to an award or reimbursement of attorneys' fees if the Court finds a counterclaim is frivolous, in that complaint, counterclaim cross-claim or defense was commenced, used or continued in bad faith solely for the purpose of harassment, delay or malicious injury.
The judge pointed out that defendant, as a practicing attorney, knew what was appropriate or inappropriate with regard to the commencement of this type of proceeding. She further noted that defendant had filed numerous lawsuits and administrative actions against the Township and its elected or appointed officials, all of which had been dismissed, indicating that they were not meritorious. She incorporated by reference the several instances of such litigation cited in plaintiff's counsel's certification. The judge specifically explained that defendant had successfully moved before another judge for a summary judgment to dismiss the plaintiff's complaint, yet sought different treatment for himself upon similar facts.
*267 As we have pointed out earlier in this opinion, however, although the parties each claimed defamation, the situations were different. Plaintiff's report concerning defendant required an analysis beyond the apparently-governing broad statement in Erickson v. Marsh & McLennan Co., 117 N.J. at 563, 569 A.2d 793, discussed earlier. We cannot say that the decision in this case was so open and shut that defendant's counterclaim can be said to have been filed "solely for the purpose of harassment, delay or malicious injury." If, in fact, the various allegations of the counterclaim were maliciously false, and believed by defendant as having given cause for his rejection as a candidate for the position of police officer, there at least was a sufficiently arguable claim to raise a factual dispute. Whether defendant actually believed there was such a basis is a factual matter not specifically addressed by the trial judge.
When the Supreme Court adopted the Disciplinary Review Board's report and recommendations (in In the Matter of Loigman, 117 N.J. 222, 565 A.2d 1076 (1989)), it recognized that respondent's actions had adversely reflected on his fitness to practice law, and on the legal profession. Id. at 232, 565 A.2d 1076. In the McCabe matter described in that opinion, defendant resorted to a criminal complaint because he was annoyed and because he wanted to teach a general lesson to people. Id. at 236, 565 A.2d 1076. He was found to have had "harsh and rigid expectations" with regard to his clients, but not to apply such standards to himself. "Nowhere to be found is any expression of regret, contrition or humility." Id. at 238, 565 A.2d 1076. The imposition of the Rule 11 sanctions against defendant are documented in Loigman v. Massachusetts Bay Ins. Co., 235 N.J. Super. 67, 561 A.2d 642 (App.Div. 1989), wherein defendant unsuccessfully sought to obtain reimbursement for the sanctions under his homeowners liability coverage. The court there quoted from Judge Thompson's opinion in which she stated that the underlying lawsuit "was totally devoid of any factual basis." (emphasis by Judge Thompson). Id. at 73, 561 A.2d 642. Judge Thompson further found his *268 behavior unconscionable. Ibid. Against this background, we are hesitant to assume defendant's good faith in filing the counterclaim. Yet with the history of obvious bad feelings between plaintiff and defendant, there was at least a modicum of basis for a claim of malice concerning the alleged misstatements asserted in the counterclaim. Were the law as open and shut as it appeared before the trial judge, we would have no hesitancy in affirming the award of attorney's fees, even without an evidentiary hearing. But with the law open to question, and with a semblance of a claim of malice, the judge should have held a plenary hearing before determining whether the sanction was warranted.[5] Since the law focuses on the subjective intent of Loigman, this raises an issue of fact to be assessed by the trial judge. We therefore must vacate the judgment for counsel fees, and remand for an evidentiary hearing on that issue.
The award of counsel fees is vacated, and the matter remanded for a hearing on the counsel fee issue. Otherwise, the judgment is affirmed.
NOTES
[1] There clearly is an absolute privilege for statements made during judicial or quasi-judicial proceedings, including quasi-judicial proceedings before a municipal governing body. Yet while such statements are absolutely privileged, we have found no New Jersey case holding statements made at a municipal legislative hearing to be accorded an absolute, as opposed to a qualified, privilege. In fact, while not the subject of a direct holding, many cases have stated that public statements made in legislative or administrative settings are only qualifiedly privileged. See Burke v. Deiner, 97 N.J. 465, 474-475, 479 A.2d 393 (1984) (citing Rainier's Dairies v. Raritan Valley Farms, 19 N.J. 552, 562, 117 A.2d 889 (1955)); T & M Homes, Inc. v. Township of Mansfield, 162 N.J. Super. 497, 509, 393 A.2d 613 (Law Div. 1978). Since there has been no cross-appeal, however, we need not adjudicate this issue.
[2] N.J.A.C. 4A:4-4.7(b)(1) reads:

(b) An appointing authority that requests removal of an eligible's name from a list shall submit to the Department, no later than the date for disposition of the certification, all documents and arguments upon which it bases its request.
1. Unless otherwise provided, the appointing authority shall provide the eligible with copies of all materials sent to the Department.
[3] As noted earlier, we have this day affirmed the final action of the Civil Service Commission affirming the removal of defendant's name from the eligible list.
[4] We note, however, that in the private sector similar statements are accorded only a qualified privilege. See Garrow v. Elizabeth Gen'l Hosp. & Dispensary, 79 N.J. 549, 568, 401 A.2d 533 (1979) (discussions of qualifications of candidates for hospital staff appointments); Mick v. American Dental Ass'n, 49 N.J. Super. 262, 278, 139 A.2d 570 (App.Div. 1958) (communication between the Dental Association and its members on a matter of common interest was only qualifiedly privileged); Rogozinski v. Airstream by Angell, supra, 152 N.J. Super. at 150, 377 A.2d 807 (concerning a private party's response to Unemployment Compensation Commission inquiry, distinguishing the absolute immunity afforded a public officer because "no judicial or quasi-judicial proceeding was pending at that time").
[5] We reject defendant's assertion that because the Township attorney was substituted as counsel and plaintiff was relieved of further out-of-pocket expenses, that attorney's fees were precluded.