**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1351-22

MICHAEL JACKSON,
LEON MONDELLI,
MICHAEL MERHI,
ALDEMAR VELEZ, and
CARMEL CORNWALL,

     Plaintiffs-Appellants,

v.

319 PENN DEVELOPMENT, LLC
and the CITY OF PATERSON
BOARD OF ADJUSTMENT,

     Defendants-Respondents.

_____

Argued May 7, 2024 – Decided July 23, 2024

Before Judges Sumners and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1003-22.

John J. Segreto argued the cause for appellants (Segreto & Segreto, LLP, attorneys; John J. Segreto, of counsel and on the briefs).

Derek W. Orth argued the cause for respondent 319 Penn Development, LLC (Inglesino Taylor, attorneys; Derek W. Orth and Alyssa E. Spector, of counsel and on the brief).

Marco A. Laracca argued the cause for respondent City of Paterson Board of Adjustment (Bio & Laracca, P.C., attorneys; Marco A. Laracca, on the brief).

PER CURIAM

Plaintiffs Michael Jackson, Leon Mondelli, Michael Merhi, Aldemar Velez, and Carmel Cornwall appeal the trial court's order affirming defendant City of Paterson Board of Adjustment's decision granting defendant 319 Penn Development, LLC preliminary and final site plan approval, design waivers, and numerous variances under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136, to develop a mixed-use residential and commercial project at a former government office building. We affirm.

I.

A.

319 Penn owns the abandoned Passaic County administration building in Paterson, which is located at 305-319 Pennsylvania Avenue (the property)—bounded by Railway Avenue, Buffalo Avenue, and Columbia Avenue—in a Mixed Use District. The city's zoning ordinance allows "commercial and industrial uses" in the district "to create an environment for effective integration

2

A-1351-22

and mutual support among the nonresidential activities and to promote more viable economic development and higher land values." Paterson, N.J., Code ch. 483, art. V, § 500-2.1(I). It prohibits new residential development in the district "to protect homes from the adverse effects of the light industrial and intensive commercial uses permitted in the district and to conserve the supply of land for such uses." Ibid.

In 2021, 319 Penn applied to the Board for preliminary and final site plan approval, plus:

- Waivers of several procedural requirements for site plan approval;

- Use variances, pursuant to N.J.S.A. 40:55D-70(d), to permit residential development in the Mixed Use District and for floor area ratio (1.4 maximum permitted, 5.0 proposed), density (67 total units permitted for a lot of the property's size, 175 units proposed), and height (three floors permitted, five floors proposed);

- Bulk variances, pursuant to N.J.S.A. 40:55D-70(c), for front yard setback on Columbia, Pennsylvania, and Buffalo Avenues (25 feet required on each street, 0 feet proposed for each street); side yard setback (15 feet required, 0 feet proposed), lot coverage (20% permitted, 99% proposed), open space (38,350 square feet required, 11,767 square feet proposed), parking space size (for undersized spaces), and parking setbacks (3 feet from property line required, 0 feet proposed); and

3

- Design waivers for minimum parking space size, parking space width (nine feet required, eight feet proposed), and loading zone dimensions.

The proposed development's residential units would comprise three studio apartments, eighty-five 1-bedroom/1-bathroom apartments, three 2-bedroom/1-bathroom apartments, seventy-seven 2-bedroom/2-bathroom apartments, and three 3-bedroom/2-bathroom apartments. The proposal included a new "stormwater management system," "signage, landscaping, drainage improvements, curbing, concrete sidewalks, streetscape improvements, fencing, lighting," and improved utilities.

319 Penn published notice of the December 9, 2021 Board hearing of its application in a local newspaper and sent copies of the notice by certified mail to all property owners within 200 feet of the property. 319 Penn obtained certified mail receipts from the post office, all except the receipt for the mailing addressed to Diego Cabrera, were stamped. However, post office tracking history showed Cabrera's mailing was delivered on December 2. Another mailing addressed to Harold C. Ranges, Jr. was mislabeled with the wrong door number, delaying its delivery. However, post office tracking history showed this mailing was delivered, as was a second mailing sent to a company controlled by Ranges with the same mailing address as Ranges himself. Two days before

4

A-1351-22

the hearing, 319 Penn submitted to the Board an affidavit showing it mailed notice to all neighboring property owners.

B.

At the December 9 Board hearing, 319 Penn presented the following expert testimony:

1. Architect

Albert Arencibia, a licensed architect in seven states with over thirty years of experience, described the proposed development as a "state-of-the-art building" and detailed its indoor and outdoor amenities and architectural features, floor by floor. Arencibia stated the proposed development would "revitalize the neighborhood" by replacing a vacant building that has been "an eyesore in the community" with a modern structure "open to the neighborhood" and compatible with the surrounding aesthetic. The proposed development's exterior would feature decorative columns, a canopy, lighting to "create a nice interest hue at night," a landscaped entrance area designed to give off "a nice soft look" from the street, and transparent panes through which passersby would be able to see inside the lobby.

Arencibia maintained the proposed development's retail spaces would "serve the residents of the area" and the building's residents and create a

commercial corridor on Buffalo Avenue, next to an existing farmer's market. To serve the retail customers, the retail space included an outdoor courtyard and separate parking spaces on Columbia Avenue, which would prevent retail customers from using street parking that could be used by the farmer's market or neighboring residents.

Arencibia further detailed services offered to the building's residents. It would feature a two-story parking garage, enter and exit on Columbia Avenue, staffed with an on-site parking attendant. The building would also have 24/7 "on-site management" to assist residents and a security system with cameras and on-site security personnel, who would have direct contact the local police station. Trash collection would be done by a private firm—not the municipality—at times convenient for residents and neighbors.

Responding to the Board's concerns about the impact on the surrounding area, Arencibia opined there would be no significant impact on local schools because, in his experience, projects like this did not attract many families with school-age children. Answering a question from Mondelli, Arencibia clarified there would be vehicle access only on Columbia Avenue because it was "underutilized" compared to Buffalo or Pennsylvania Avenues and was structurally better suited for the new retail parking.

6

## 2. Engineer

Project engineer Adnan Khan, a licensed professional engineer in four states and a New Jersey certified municipal engineer with over thirty years of experience, echoed the improvements Arencibia detailed and described the planned stormwater management system. He added landscaping would include shade trees "all around the block" on Columbia, Buffalo, and Pennsylvania Avenues. New lighting would illuminate the block "to provide a safe passage for tenants or any passerby" at night. Khan noted that new sidewalks and curb cuts would be installed.

## 3. Traffic Engineer

John Corak, a licensed traffic engineer,[1] authored a traffic study concluding the property was "particularly well-suited for traffic patterns in the area." He stated traffic would be dispersed "in all different directions" from the property because it was bounded by four streets. He explained "[a]ll the different routes to come in and out of the site and an access point that is along from an access management perspective, the best street that it could be located on within this design." Additionally, Corak testified the increased traffic from

---

[1] Because Corak had testified before the Board the previous week regarding a different application, the Board did not have him mention his experience.

A-1351-22

the proposed development would still be less than the increase caused by purely commercial or residential development, as residential use generated less traffic than other land uses.

The Paterson city planner, noting the proposed development's size itself required several variances, questioned the traffic impact caused by attracting hundreds of cars and people to the neighborhood. Corak responded that the property could accommodate the increased traffic because residents would not be entering or leaving the site at the same time of day and, in his experience, residential developments with road connections like those bounding the property dispersed traffic throughout the day.

Corak also asserted Columbia Avenue was the best place for vehicle access points because "when you locate access and driveways for developments, you want to place them on the roadways that are less traveled" so drivers entering or exiting the property can turn with minimal disruption to existing traffic. The proposed development would increase the amount of parking on Columbia Avenue by replacing the existing parallel parking spaces with "90-degree right angle spaces," which would accommodate more parked cars than parallel parking. He added 319 Penn would make the street more conducive to street parking by eliminating its "one long curb cut." As for residents' on-site

A-1351-22

parking, Corak explained the garage would accommodate several different car types in the same spaces.

4. Planning Expert

Kathryn Gregory, a New Jersey professional planner for over twenty years who has served as a city planner for many New Jersey towns, testified regarding the variances sought by 319 Penn. At the outset of her testimony, the city planner stated he agreed the property was suitable for the proposed development. Gregory, using an aerial photograph of the surrounding neighborhood overlaid with zone boundaries, showed that the property was located at the edge of the Mixed Use District and bordered another zone where mixed residential and commercial uses were allowed at higher densities and building heights than permitted in the Mixed Use District. She also testified the property is much larger than the surrounding mixed-use lots. She stated that while the proposed development's tallest point would be forty feet high, the structure would be of "varying heights." She opined those characteristics warranted use variances to permit a mixed-use building of the proposed development's scale on the property.

In addressing the other requested variances, Gregory explained they were necessary or beneficial, acknowledging "a lot of the variances are very

intermingled" in this development plan. She explained 319 Penn planned to demolish the property's existing building and construct a new building, which was more economically feasible than renovating the existing building.

Gregory then opined the proposed development's varied amenities and features would not substantially detriment the public, but would advance the following objectives set forth in the Paterson master plan:

- "To improve the appearance of [Paterson's] streets" by improving "facades of civic and commercial structures"; providing "new landscaping, street trees, street furniture, decorative street lights, and other attractive streetscape elements"; improving sidewalks; and reduced graffiti and litter.

- "To provide for a variety of housing types that will attract and retain a mix of residents from various socio-economic backgrounds."

- "To address issues related to a high cost of living from an inflated rental housing market" by expanding "the supply of housing to help drive down" housing costs.

- "To provide opportunities for local employment growth" by attracting industries that will hire Paterson residents.

She concluded the proposed development represented "more of a highest and best use than any of the permitted uses in the" Mixed Use District.

A-1351-22

C.

At the hearing's conclusion, the Board approved 319 Penn's application subject to conditions recommended by the city planner. Almost three months later, the Board adopted a resolution memorializing its decision.

The Board's resolution summarized the variances requested except the height variance and recited the presented testimony; 319 Penn's representations, concerns expressed by Board members and the public; and the city planner's recommended conditions should the Board approve the application. The Board made four "findings of fact":

> 1. The application will not create any undue interference and/or hardship to the neighborhood.
>
> 2. The application is appropriate for the neighborhood.
>
> 3. The application will not create any detriment to the public good.
>
> 4. The application will not create a parking hindrance to the neighborhood . . . .

Next, the resolution stated the Board granted 319 Penn's application, subject to several specific conditions, including 319 Penn's ongoing compliance with all relevant laws and "adher[ence] to all of the representations and conditions placed on the record at" the December 9, 2021 "[p]ublic [h]earing[]."

11

D.

Plaintiffs challenged the Board's approval of 319 Penn's application by filing a complaint in lieu of prerogative writs. They alleged, among other things: (1) "319 Penn's notice was defective"; (2) the Board's decision was arbitrary, capricious, and unreasonable; (3) the Board "failed to make any of the required findings of facts and conclusions of law"; (4) 319 Penn provided insufficient support for the variances it requested; and (5) 319 Penn's "experts only offered net opinions without any support in the record."

Following a trial de novo, the trial court issued an order and written decision affirming the Board's grant of 319 Penn's application subject to conditions. The court determined the proofs established the required neighboring property owners received notice of the application and the Board hearing date, and the Board's failure to have the record reflect that fact did not deprive it of jurisdiction to consider the application. The court stressed 319 Penn's certified mail receipts and affidavit of mailing showed it gave proper notice, as "[n]otice is complete upon mailing not upon the return receipt." Szczesny v. Vasquez, 71 N.J. Super. 347, 354 (App. Div. 1962).

The court held the Board's decision was not arbitrary, capricious, or unreasonable because "there was substantial uncontroverted evidence in the

12

record and in the [r]esolution" to support granting the application. The court found 319 Penn's experts did not offer net opinions considering their detailed testimony was supported by facts and documents, including architectural renderings, revised site plan, traffic study, and engineering reports, in the record. The court determined the Board's resolution "incorporate[d] the testimony and representations in the record," "refer[red] to the detailed testimony of the experts and ma[de] specific findings based on that testimony."

Lastly, the court noted the Board "did not ignore the waiver requirement" of the zoning ordinance because 319 Penn's notice disclosed its application included several waivers from zoning ordinance's site plan approval requirements. There was no objection to the waivers before or during the Board hearing.

Plaintiffs appealed.

## II.

### A.

Like the trial court, an appellate court's review of a board of adjustment's variance decision is "limited to determining whether [it] . . . was arbitrary, unreasonable, or capricious." Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 198 (App. Div. 2001). This

13

court will affirm if the "board's decision comports with the statutory criteria and is founded on adequate evidence." Burbridge v. Governing Body of Mine Hill, 117 N.J. 376, 385 (1990). We do not substitute our own independent judgment for that of the zoning board; review is limited to "whether the board could reasonably have reached its decision." Davis Enters. v. Karpf, 105 N.J. 476, 485 (1987); Cummins v. Bd. of Adjustment, 39 N.J. Super. 452, 460 (App. Div. 1956). Courts, however, generally show less deference towards grants than denials of use variances. Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 75 (App. Div. 2006).

"Variances to allow new nonconforming uses should be granted only sparingly and with great caution since they tend to impair sound zoning." Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 275 (1967). We review a ruling concerning the adequacy of expert opinion for abuse of discretion. Riley v. Keenan, 406 N.J. Super. 281, 295 (App. Div. 2009). Lastly, this court reviews the trial court's interpretation of the MLUL or municipal zoning ordinance de novo, as these determinations present questions of law. See Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 559 (2018). Zoning boards have "'no peculiar skill superior to the courts' regarding purely legal matters." Ibid. (quoting Chicalese v. Monroe Twp. Plan. Bd., 334 N.J. Super. 413, 419 (Law Div. 2000)).

14

B.

Guided by the above principles, we separately address and reject plaintiffs' contentions on appeal.

1. Notice

Plaintiffs claim 319 Penn's failed to establish proper notice of the Board hearing to property owners within 200 feet of their property by marking into evidence the notices, affidavit of mailing, and affidavit of publication. Rockaway Shoprite Assocs., Inc. v. City of Linden, 424 N.J. Super. 337, 352 (App. Div. 2011); Perlmart of Lacey, Inc. v. Lacey Twp. Plan. Bd., 295 N.J. Super. 234, 237 (App. Div. 1996). Plaintiffs also assert the Board failed to state on the record whether 319 Penn provided proper notice. By failing to strictly comply with notice requirements, plaintiffs claim the Board's resolution is void.

319 Penn contends it is only required to submit an affidavit of proof of service with the Board, N.J.S.A. 40:55D-12(i), which it did two days before the hearing. The Board contends it satisfied its statutory requirements at the beginning of the hearing by finding 319 Penn satisfied all notice requirements, and plaintiffs did not show they or anybody else were prejudiced from an alleged inadequate notice. In addition, defendants point out the post office tracking history demonstrates all certified mailings of notice were timely mailed at least

15

ten days before the hearing and confirmed; notice by certified mail is "complete upon mailing," N.J.S.A. 40:55D-14; Szczesny, 71 N.J. Super. at 354.

The MLUL mandates that the public receive several forms of notice at least ten days before a zoning board hears "applications for development," including variance applications, N.J.S.A. 40:55D-3. N.J.S.A. 40:55D-12(a). "[P]roper public notice in accordance with the requirements of the MLUL is a jurisdictional prerequisite for a zoning board[]" to hear an application. Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adjustment, 397 N.J. Super. 335, 350 (App. Div. 2008) (citing Perlmart of Lacey, Inc., 295 N.J. Super. at 237). Among other requirements, the applicant must notify all property owners "within 200 feet . . . of the property which is the subject of [the] hearing," which it may do by sending them notice through certified mail. N.J.S.A. 40:55D-12(b).

As defendants correctly contend, the MLUL merely requires neighboring property owners "be given" notice. Ibid. It does not require receipt, nor do its detailed requirements for zoning board hearings require specific jurisdictional findings, N.J.S.A. 40:55D-10. "'[A]bsent any specific indication of legislative intent to the contrary,' the court should not read into the statute language that is simply is not there." Schundler v. Donovan, 377 N.J. Super. 339, 345 (App.

Div. 2005) (quoting Chase Manhattan Bank v. Josephson, 135 N.J. 209, 225 (1994)).

Plaintiffs offer no legal authority refuting the trial court's reliance on Szczesny, which concluded notice by mail occurs once the notices are "properly mailed, regardless of [their] receipt." 71 N.J. Super. at 354. They provide no proof that a property owner entitled to notice did not receive it. Courts presume mail "correctly addressed, stamped and mailed was received by the party to whom it was addressed" unless a party shows the intended recipient "never in fact received" it. Ibid. The tracking histories and affidavits, establish that all property owners within 200 feet of the proposed development received proper notice.

2. Experts' Opinions

Plaintiffs contend that 319 Penn's traffic engineer Corak and planner Gregory offered net opinions, which the Board and trial court should not have considered. Defendants argue the trial court correctly determined the experts did not offer net opinions, as they all explained the facts, data, or evidence they relied on, and the Board did not err by finding the experts credible, Baghdikian v. Bd. of Adjustment, 247 N.J. Super. 45, 49 (App. Div. 1991), and relying on their testimony, TSI E. Brunswick, LLC v. Zoning Bd. of Adjustment, 215 N.J.

26, 46-47 (2013); Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 86-87 (2002).

N.J.R.E. 703 requires an expert's opinion be "grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Polzo v. County of Essex, 196 N.J. 569, 583 (2008)). "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alteration in original) (quoting Polzo, 196 N.J. at 583). The rule "mandates that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). "An expert's conclusion 'is excluded if it is based merely on unfounded speculation and unquantified possibilities.'" Ibid. (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). "[A]n expert offers an inadmissible net opinion if he or she 'cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is personal.'" Davis v. Brickman

Landscaping, Ltd., 219 N.J. 395, 410 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011)) (internal quotation marks omitted). An expert's testimony must not constitute speculation. Grzanka, 301 N.J. Super. at 580. Although our evidentiary rules do not strictly apply in zoning board hearings, N.J.S.A. 40:55D-10(e), our courts have held the net opinion rule applies in variance proceedings, e.g., New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adjustment, 160 N.J. 1, 16 (1999).

Both experts relied on specific characteristics of the proposed development, property, or surrounding neighborhood when explaining their respective opinions. Corak did not, as plaintiffs assert, fail to provide any basis for his opinion that the property's size and location were well-suited to disperse incoming traffic; explain how traffic would be distributed when vehicles could only enter or exit the site from Columbia Avenue, how the proposed development would affect local traffic or schools; or cite any traffic study or other data marked into evidence. Corak thoroughly detailed his findings based on studying the property and its surrounding streets.

Likewise, plaintiffs incorrectly argue Gregory cited no evidence to "explain the 'why and wherefore' of [her] opinions" about the proposed development's benefits and lack of substantial detriment to the public. Gregory

relied on an annotated aerial photograph and drew on the property's location relative to neighboring zones. We discern no abuse of discretion in the trial court's determination their testimony was not inadmissible net opinion. See Pomerantz, 207 N.J. at 371.

3. Use Variance Evidence

Plaintiffs argue 319 Penn "failed, miserably," to justify the requested use variances. Specifically, 319 Penn did not establish the proposed development is particularly suitable for the property; proffered improper reasons for granting the use variances; failed to show how the proposed development would not substantially impair the intent and purpose of the zoning ordinance and master plan when it is incompatible with the Mixed Use District's permitted uses and would substantially detriment the local community.

Defendants contend the Board had sufficient evidence to grant the requested use variances based on the expert testimony of their planner. They also point out the city planner agreed the property is suitable for the proposed development plan.

We conclude the Board's decision was supported by the record, as established during the hearings, and was not arbitrary, capricious, or unreasonable. See J.D. Constr. Corp. v. Isaacs, 51 N.J. 263, 270 (1968); Kramer

v. Bd. of Adjustment, 45 N.J. 268, 296 (1965); Cohen v. Bd. of Adjustment, 396 N.J. Super. 608, 615 (App. Div. 2007). In reaching this conclusion, we are mindful that "[v]ariances to allow new nonconforming uses should be granted only sparingly and with great caution since they tend to impair sound zoning." Kohl, 50 N.J. at 275; see also Burbridge, 117 N.J. at 385. And based on our de novo review of the law, the Board complied with the MLUL as well as its zoning ordinances. See Dunbar Homes, Inc., 233 N.J. at 559.

To obtain a use variance under N.J.S.A. 40:55D-70(d), an applicant must satisfy both positive and negative criteria. Sica v. Bd. of Adjustment, 127 N.J. 152, 156 (1992). The positive criteria require "the proposed site is particularly suitable for the proposed use." Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323 (1998) (quoting Medici v. BPR Co., 107 N.J. 1, 4 (1987)). "To satisfy the negative criteria, an applicant must show that the use will not substantially impair the purpose and intent of the zoning ordinance, or constitute a substantial detriment to the public good." New Brunswick Cellular Tel. Co., 160 N.J. at 15.

The trial court correctly determined 319 Penn's witnesses satisfied these criteria. All four 319 Penn's experts' testimony referenced specific characteristics of the property and its surrounding streets in to support the prosed

development plan. See Vidal v. Lisanti Foods, Inc., 292 N.J. Super. 555, 565 (App. Div. 1996) (requiring "special reason[s]" grounded in "a peculiar feature" specific to the property). And the planning expert pointedly analyzed the zoning ordinance and master plan's objectives. Though plaintiffs note the proposed development plan contradicts the city's other master plan goals, the Board properly considered the proposed development's pros and cons. The record demonstrates the Board "followed the statutory guidelines and properly exercised its discretion" when approving 319 Penn's use variance request. See Med. Ctr. at Princeton, 343 N.J. Super. at 199. The Board properly exercised its fact finder role in accepting the experts' opinions, with no contrary evidence showing its determination was not "reasonably made, that decision is conclusive on appeal." Nextel of N.Y., Inc. v. Borough of Englewood Cliffs Bd. of Adjustment, 361 N.J. Super. 22, 41 (App. Div. 2003).

4. Bulk Variances, Design Waivers, and Site Plan Approvals

Plaintiffs contend 319 Penn's application and the Board's resolution erred by only addressing one of the twenty-four factors, i.e., stormwater, set forth in the zoning ordinance's site plan review requirements, Paterson, N.J., Code ch. 483, art. III, § 300-6.5, in either. They contend 319 Penn's experts failed to address the impracticality and undue hardship requirements for granting parking

design waivers, which the Board also did not mention in its resolution.  N.J.S.A. 40:55D-51(b).  Plaintiffs add it is unclear what bulk variances, site plan, or design waivers the Board ultimately approved because 319 Penn never marked the proposed site plan into evidence.

Defendants emphasize there was sufficient evidence to support the Board's grant of the requested bulk variances, parking design waivers, and site plan approval based upon the experts' testimony.  319 Penn argues "approval of a use variance compels approval of variances from the bulk regulations and the design waivers" because the bulk variances and design waivers were "ancillary to the" requested use variances, Price v. Himeji, LLC, 214 N.J. 263, 301 (2013), as a zoning board must "consider the overall site design" when deciding a use variance application, Puleio v. N. Brunswick Twp. Bd. of Adjustment, 375 N.J. Super. 613, 621 (App. Div. 2005).  The Board agrees and adds it "advance[d] the purposes of the MLUL and create[d] benefits that outweigh[ed] any detriment caused by deviating from the zoning ordinance."  Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 57 (1999).  319 Penn also maintains the Board "did not ignore the site plan ordinance" by granting the waivers after it indicated it would seek relief from specific site plan ordinance requirements in its application and notices.

We discern no error in the Board's decision granting bulk variances, design waivers, and site plan approval to 319 Penn. Under the MLUL, a zoning board may grant a bulk variance when the MLUL's purposes "would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment." N.J.S.A. 40:55D-70(c)(1). Defendants aptly rely on Price. There, our Supreme Court declined to reverse a zoning board's determinations for a bulk variance because while "the Board referred to the [bulk] variances as being subsumed in the consideration of the [use] variances, the record of the Board's review of the building's overall design amply supports its decision" to grant the bulk variances. 214 N.J. at 301. Several of 319 Penn's experts, most notably its planner, opined the proposed development's benefits would outweigh its detriments, citing the numerous improvements it would make to the surrounding neighborhood and master plan objectives it would promote. As she recognized, the characteristics favoring the requested use variances also supported the bulk variances.

As to the design waivers, a zoning board may grant design waivers when approving a site plan "as may be reasonable and within the general purpose and intent of the [zoning ordinance's] provisions for site plan review . . . if the literal

enforcement of one or more provisions of the ordinance is impracticable or will exact undue hardship because of peculiar conditions pertaining to the land in question." N.J.S.A. 40:55D-51(b). 319 Penn's planner and traffic engineer equally addressed these criteria. The planning expert distinguished the property from surrounding lots, explaining the permitted uses for the Mixed Use District were not suitable for it. The traffic engineer explained the property's location near four streets allowed traffic to disperse in different directions throughout the day, creating specific traffic challenges that the application would address.

Finally, the Board's resolution in not citing the site plan approval requirements was not inadequate because they largely involve compliance with various local, state, or federal laws. Paterson, N.J., Code ch. 483, art. III, § 300-6.5(B). The Board's conditions for approval included 319 Penn obtaining the necessary approvals from relevant local or state authorities in compliance with state and federal laws as well as other local ordinances. The trial court correctly observed 319 Penn also sought waivers from other site plan approval requirements, which the Board granted with the rest of the application. Plaintiffs do not claim this waiver was invalid.

5. The Board's Resolution

25

Plaintiffs contend the Board's resolution was inadequate and should be voided as it set forth "no findings and conclusions concerning special reasons for the granting of the use variance" and no factual findings as to particular suitability, the intent and purpose of the zoning ordinance or master plan, positive or negative criteria for granting use variances, or 319 Penn's "compliance with the Site Plan Ordinance for preliminary and final site plan approval." They argue the resolution's "whereas" clauses are not findings because they merely recite testimony and comments from the hearing.

Defendants contend the resolution properly detailed the application, all witnesses' testimony, the exhibits, remarks made by members of the public, the Board's concerns and 319 Penn's representations in response, and the city planner's concerns and recommended conditions. Defendants assert the positive and negative criteria for use variances were set forth in the resolution.

The MLUL requires a zoning board's resolution memorialize variance and site approval decisions in a resolution setting forth the factual findings and legal conclusions supporting the decision. N.J.S.A. 40:55D-10(g). The resolution cannot simply recite "testimony or conclusory statements couched in statutory language." N.Y. SMSA, Ltd. P'ship v. Bd. of Adjustment, 370 N.J. Super. 319, 332-33 (App. Div. 2004). Instead, it "must contain sufficient findings, based on

the proofs submitted, to satisfy a reviewing court that the board has analyzed the applicant's variance request in accordance with the statute and in light of the municipality's master plan and zoning ordinances." Ibid.

The Board's resolution appropriately identified specific facts and details from 319 Penn's proposed development plan and its experts' testimony supporting the application. It also acknowledged several Board members and the public had raised specific concerns about the proposed development, detailing those concerns separately in the resolution.

We agree with plaintiffs that the resolution does not address each variance individually or show which facts supported which statutory criteria, instead analyzing the application as a whole. See Com. Realty & Res. Corp. v. First Atl. Props. Co., 122 N.J. 546, 566 (1991). In particular, the resolution does not mention the height variance among the variances 319 Penn requested, despite being addressed at the hearing. Nor does it mention the traffic engineer's qualifications or confirm the Board accepted him as an expert, even though the resolution discusses his testimony. Nevertheless, considering the extensive hearing testimony, the Board's decision granting the application is sufficiently supported, and there is no need to remand for an amplified resolution. See id. A remand would unnecessarily delay this development project. See R. 1:1-2(a).

27

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

28