810 A.2d 1175

IN THE MATTER OF THE APPLICATION OF VIRGO'S, INC., PLENARY RETAIL CONSUMPTION LICENSE NUMBER 1215–33–007–005 ISSUED BY THE GOVERNING BODY OF THE TOWNSHIP OF NORTH BRUNSWICK.

Superior Court of New Jersey
Appellate Division

Argued November 13, 2002—Decided December 11, 2002.

---

[6] Nothing in the Supreme Court's recent decision in *Flagg v. Essex County Prosecutor*, 171 *N.J.* 561, 796 A.2d 182 (2002), suggests a different standard, or a different result from the one we reach here.

592

Before Judges SKILLMAN, LEFELT and WINKELSTEIN.

*Dennis Alan Auciello* argued the cause for appellant Virgo's, Inc.

*Lorinda Lasus,* Deputy Attorney General, argued the cause for respondent *New Jersey Division of Alcoholic Beverage Control* (*David Samson,* Attorney General, attorney; *Ms. Lasus,* on the brief).

The opinion of the court was delivered by

LEFELT, J.A.D.

In this appeal, we answer the question left open in *Cavallaro 556 Valley St. Corp. v. Div. of Alcoholic Beverage Control,* 351 *N.J.Super.* 33, 796 *A.*2d 938 (App.Div.2002): whether the Director of the Division of Alcoholic Beverage Control has authority to find substantial compliance with the statutory time frames for renewal of plenary retail liquor licenses. We conclude that the Director has such authority but affirm the Director's refusal to find substantial compliance in this matter.

## I.

The pertinent facts and procedural history follow. Paul Golden, the sole shareholder and president of Virgo's, Inc., submitted a bid on February 25, 1998 for a plenary retail consumption liquor license at a Division of Taxation public auction. The auction was subject to several conditions, including number two, which provided that the license was "sold subject to any and all legal encumbrances." In addition, condition five required any successful bidder to "make a good faith application to the local issuing authority for the transfer of the license within 15 days after acceptance of the bid."

Golden's bid of $126,000 was accepted by the Division, and within the allotted time, Golden applied to the Township of North Brunswick for a person-to-person transfer of the license. Because Golden had two 1984 attempted burglary convictions, however, the Township denied Golden's person-to-person license transfer.

The bid conditions also provided that if a timely transfer application was denied, "the monies paid will be refunded." Instead of seeking a refund, however, Golden requested the Division of Alcoholic Beverage Control (ABC) to remove his disqualification. On November 9, 1999, the Director of the ABC (Director) issued an order removing Golden's criminal disqualification, and a little over one month later Golden filed another person-to-person transfer application. In March 2000, North Brunswick denied Golden's second transfer application, and the next day Golden appealed to the ABC.

The ABC transmitted Golden's appeal to the Office of Administrative Law (OAL) where an administrative law judge on August 11, 2000 noted that the license had not been renewed and directed the parties to seek clarification from the ABC on the status of the license. ABC informed Golden on September 6, 2000 that no one had attempted to renew the license in question for the years 1998–99, 1999–2000 and 2000–2001.

Golden then sought relief in the Law Division by suing the ABC and the Division of Taxation. These suits were dismissed on May 11, 2001. On July 16, 2001, Virgo's petitioned the Director for issuance of the license. The Director denied Virgo's request for a "new" license for the 2001–2002 license term. The Director concluded that because the license was no longer extant, he had no authority to consider, under *N.J.S.A.* 33:1–12.18, whether Virgo's failure to renew was due to circumstances beyond the licensee's control. Furthermore, the Director found that Virgo's had not established substantial compliance with the statutory renewal requirements. Virgo's timely filed this appeal from the Director's decision.

## II.

We first examine the Director's authority to determine whether an applicant has substantially complied with the renewal requirements. Beginning with *Ronnie Trent Enterprises,* ABC Bulletin 2296, Item No. 2, at 13–14 (1978), the Director has occasionally

utilized the substantial compliance doctrine to excuse the failure of a party to comply strictly with the terms of the license renewal statute. *E.g., Newby v. Div. of Alcoholic Beverage Control,* OAL Docket No. ABC 5980–94 (1996).

The substantial compliance doctrine applies where there is: (1) a lack of prejudice to the opposing party; (2) a series of steps taken to comply with the statute involved; (3) general compliance with the purpose of the statute; (4) reasonable notice of the party's claim; and (5) a reasonable explanation of why there was not strict compliance with the statute. *Galik v. Clara Mass Med. Ctr.,* 167 *N.J.* 341, 353, 771 *A.*2d 1141 (2001) (citing *Bernstein v. Bd. of Trs. Teachers' Pension & Annuity Fund,* 151 *N.J.Super.* 71, 76–77, 376 *A.*2d 563 (App.Div.1977)). " 'Substantial compliance' with a statutory requirement is normally sufficient and occurs whenever, as a practical matter, it is reasonable to conclude that partial compliance has fully attained the objective of the statute ..." *Houman v. Mayor of Pompton Lakes,* 155 *N.J.Super.* 129, 169, 382 *A.*2d 413 (Law Div.1977).

There is no express statutory authorization empowering the Director to apply the substantial compliance doctrine. There is also, however, no express preclusion, and administrative agencies must be given broad authority to carry out their mandates. *See New Jersey State League of Municipalities v. Dep't of Cmty. Affairs,* 158 *N.J.* 211, 222–23, 729 *A.*2d 21 (1999). As the Court in *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 562, 384 *A.*2d 795 (1978), explained, "[t]he authority possessed by an administrative agency 'consists of the powers expressly granted which in turn are attended by those incidental powers which are reasonably necessary or appropriate to effectuate the specific delegation.' " *Ibid.* (quoting *In re Regulation F–22, Office of Milk Indus.,* 32 *N.J.* 258, 261, 160 *A.*2d 627 (1960)).

Moreover, "the grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and ... courts should

readily imply such incidental powers as are necessary to effectuate fully the legislative intent." *Ibid.* (citing *In re Suspension of Heller*, 73 *N.J.* 292, 303, 374 *A.*2d 1191 (1977); *Cammarata v. Essex County Park Comm'n*, 26 *N.J.* 404, 411, 140 *A.*2d 397 (1958); *Lane v. Holderman*, 23 *N.J.* 304, 315, 129 *A.*2d 8 (1957)). "[T]he absence of an express statutory authorization in the enabling legislation will [therefore] not preclude administrative agency action where, by reasonable implication, that action can be said to promote or advance the policies and findings that served as the driving force for the enactment of the legislation." *New Jersey State League of Municipalities, supra,* 158 *N.J.* at 223, 729 *A.*2d 21 (quoting *A.A. Mastrangelo, Inc. v. Comm'r, Dep't of Envtl. Prot.,* 90 *N.J.* 666, 683–84, 449 *A.*2d 516 (1982)).

▮  Here, the power of the Director to determine substantial compliance can be seen as an incidental power that is reasonably necessary or appropriate to effectuate the alcoholic beverage laws. While *N.J.S.A.* 33:1–23 requires the stringent and comprehensive administration of the alcoholic beverage laws, the statute also mandates that the Director "do, perform, take and adopt all other acts, procedures and methods" to ensure that the administration of the laws is "fair" and "impartial." The utilization by the Director of the doctrine thus furthers the legislative intent by ensuring that the stringent and comprehensive administration of the laws remains fair and impartial.

The substantial compliance doctrine when used to reach a fair and impartial result would not give the Director authority beyond the ABC's enabling legislation. The Director thus cannot alter the specific dates on which an application for renewal is due, but can determine in fairness whether to accept a timely application, even though the application may be technically deficient. When viewed in this fashion, this incidental power can be said to promote or advance a policy that served as one of the driving forces for the enactment of the legislation. *See A.A. Mastrangelo, Inc., supra,* 90 *N.J.* at 683–84, 449 *A.*2d 516. Therefore, we conclude that the Director has authority to determine substantial

compliance with the license renewal provisions of the alcoholic beverage laws.

## III.

We move on to determine whether the Director correctly decided in this matter that Virgo's failed to show substantial compliance. As we explained in *Cavallaro,* alcoholic beverage licenses "run from July 1 of one year to June 30 of the following year. *N.J.S.A.* 33:1–26. A license automatically expires on June 30." *Cavallaro, supra,* 351 *N.J.Super.* at 36, 796 *A.*2d 938. The statute contains a "thirty-day grace period ... to allow a licensee to file a renewal application after the new license term commences. *N.J.S.A.* 33:1–12.13." *Ibid.* Thus, the grace period runs from June 30 until July 30 of the year beginning the term for which renewal is sought.

After July 30, a licensee may submit a late-filed license renewal application until September 28. *N.J.S.A.* 33:1–12.18. However, the local issuing authority may not act on the renewal application unless the Director grants relief under *N.J.S.A.* 33:1–12.18. This statute permits a new license to be issued "to a person who files application therefor within 60 days following the expiration of the license renewal period," and establishes that the "failure to apply for renewal of [the] license was due to circumstances beyond [the licensee's] control." *Ibid.* The 60–day period, however, ends on September 28. Thereafter, assuming the presence of neither constitutional implications nor substantial compliance, the Director lacks legislative authority to consider either a renewal license or a new license under *N.J.S.A.* 33:1–12.18, "no matter what excuses for failing to renew in timely fashion are asserted." *Cavallaro, supra,* 351 *N.J.Super.* at 43, 796 *A.*2d 938.

The Director has in the past correctly decided that some licensees have substantially complied with the liquor license renewal statutory requirements, although technical deficiencies actually prevented renewal. In *Ronnie Trent, supra,* ABC Bulletin at 2296, for example, a former licensee made several attempts over

several years to file timely renewal applications, but was rejected because he was not the actual licensee. The actual licensee had also filed a timely but defective renewal application. After the former licensee regained control over the license, the Director found that he had substantially complied with the renewal statute by diligently attempting to preserve the license and observed that "the 60–day filing provision of *N.J.S.A.* 33:1–12.18 was [not] intended to be a stumbling block or pitfall which must be inexorably applied to deprive even a diligent individual of his license, when due to circumstances which were ... largely beyond his control, he did not fully comply with its literal terms." *Id.* at 13–14, 796 *A.*2d 938.

In this case Virgo's argues that the equities propound in its favor. We disagree and stress that substantial compliance must be determined by a careful comparison of the applicant's actions against the five substantial compliance factors. *Galik, supra,* 167 *N.J.* at 354, 771 *A.*2d 1141. General equitable considerations alone will not suffice. Here, it was not until July 16, 2001 that Virgo's filed a petition seeking the Director's approval for issuance of the subject license, which was well after the license had lapsed on July 30, 1998. While Gordon, Virgo's president, attempted to remove his criminal disqualification and obtain a person-to-person transfer, Gordon did nothing to seek renewal of this license for over three license terms. His actions placed the utility of the license in question for several years, and therefore, some "prejudice" to North Brunswick can be presumed. *Id.* at 353, 771 *A.*2d 1141.

Gordon should also have known that a criminal conviction may be a hindrance to obtaining a liquor license. *N.J.S.A.* 33:1–25 ("No license ... shall be issued ... to any person who has been convicted of a crime involving moral turpitude."). Therefore, one can legitimately argue that Gordon's bid at the Division of Taxation auction was not in good faith, as required by the bidding conditions. In addition, the sale bid was "subject to any and all legal encumbrances." Criminal disqualification is a legal encumbrance to holding a liquor license.

After the Township denied the person-to-person transfer, instead of seeking a refund as was permitted under the bid documents, Gordon sought to remove the criminal disqualification and obtain approval for the person-to-person transfer. Gordon thus, by his own choice, turned his back on a possible refund and pursued a different course at his peril. Gordon then took absolutely no "steps to comply" with the renewal requirements. *Galik, supra,* 167 *N.J.* at 353, 771 *A.*2d 1141. Thus we cannot say that there was even "general compliance with the purposes" of the license renewal provisions. *Ibid.*

The record does not reflect whether North Brunswick had "reasonable notice" that Virgo's wanted the license renewed. *Ibid.* On one hand, because Virgo's was pursuing a license transfer, we can infer that the Township must have had some idea that Virgo's was interested in renewing the license. But, on the other hand, whatever knowledge of the renewal claim acquired by the Township was obtained by inference and not through any action of Virgo's.

Virgo's argues by way of "explanation" that from the purchase of the license by Gordon on February 25, 1998, until the date the license lapsed on July 30, 1998, Gordon was not legally qualified to file for renewal. *Ibid.* Thus, Virgo's contends that the Division of Taxation should have arranged for renewal while Gordon was attempting to achieve the license transfer. While it is technically correct that during this period Gordon could not own the license, we still cannot excuse the applicant. In the absence of any timely or untimely request by Gordon or Virgo's to the Division of Taxation to seek renewal of the license, we reject this argument. Gordon, as the successful bidder, was obligated to attempt compliance, in some fashion, with ABC renewal requirements. This he did not do.

Therefore, after a careful assessment of Virgo's actions against the substantial compliance elements, we fully agree with the

Director that the facts presented do not demonstrate substantial compliance.

Affirmed.