929 A.2d 618 (2007)
395 N.J. Super. 453
FAYETTE FAIR TRADE, INC. t/a Club 41[1], Petitioner-Appellant,
v.
GOVERNING BODY OF the CITY OF PERTH AMBOY, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 2007.
Decided August 8, 2007.
*619 Samuel V. Convery, Jr., argued the cause for appellant (Convery & Convery, attorneys; Mr. Convery, of counsel and on the brief).
Lorinda Lasus, Deputy Attorney General, argued the cause for respondent Division of Alcoholic Beverage Control (Stuart Rabner, Attorney General, attorney; Ms. Lasus, on the brief).
Frank G. Capece argued the cause for respondent City of Perth Amboy (Garrubbo, Capece & Millman, attorneys; Mr. Capece, on the letter relying on the brief filed on behalf of respondent Division of Alcoholic Beverage Control).
Before Judges COBURN, AXELRAD and GILROY.
The opinion of the court was delivered by
AXELRAD, J.T.C. (temporarily assigned).
Petitioner Fayette Fair Trade, Inc. appeals from a final determination of the Director of the Division of Alcoholic Beverage Control (ABC) suspending its license based on a finding of an undisclosed business interest in the license, and the licensee's failing to disclose that interest in *620 the application, or providing false, misleading or inaccurate information about it. At issue in this appeal is whether a licensee's employee who runs the day-to-day operations of the licensed premises with little or no oversight from the owner of the corporation licensee and who shares in the licensee's profits, but is not a shareholder, holds an impermissible undisclosed beneficial interest in the liquor license in violation of N.J.S.A. 33:1-25. The ABC Director found unlawful conduct, and we affirm.

I
Appellant, the holder of a plenary retail consumption license issued by Perth Amboy, operates a bar at 329 Fayette Street. This matter arose from the decision of Perth Amboy, which, by resolution dated December 9, 2004, suspended appellant's plenary retail consumption license for 136 days, having adjudicated the licensee guilty of the following charges:
(1) Failure to maintain true books of account or failure to produce true books of account within seven business days of demand, in violation of N.J.A.C. 13:2-23.32-60-day suspension (Second Violation);
(2) Undisclosed person not otherwise disqualified with a beneficial interest in a liquor license or licensed business, in violation of N.J.S.A. 33:1-25-30-day suspension;
(3) Failure to display Fetal Alcohol Syndrome warning poster, in violation of N.J.S.A. 33:1-12a-1-day suspension; and
(4) Failure to disclose, or false, misleading or inaccurate answer to a question of material fact on application, in violation of N.J.S.A. 33:1-25-45-day suspension.
Fayette appealed Perth Amboy's decision to the ABC and requested a stay of the 136-day suspension. On December 13, 2004, the Director issued an order staying the suspension pending appeal. The matter was transmitted to the Office of Administrative Law as a contested case. The investigating detective; Ybelises Jerez, the club's manager; Mario Rosario, the licensee's sole shareholder; and the licensee's accountant testified at the plenary hearing before the Administrative Law Judge (ALJ).
The following testimony was elicited. Rosario owns 100% of the shares of stock of the licensee corporation, as reflected on the long-form liquor license application submitted for the 2000-2001 license term. Rosario answered in the negative in response to Question 9.3 on the license application:
Has the applicant agreed to permit anyone not having an ownership interest in the license to receive or agreed to pay anyone (by way of rent, salary, or otherwise) all or any percentage of the gross receipts or net profit or income derived from the business to be conducted under the license applied for?
Appellant filed short-form renewal applications for the 2001-2002, 2002-2003, 2003-2004, 2004-2005 and 2005-2006 license terms. On July 1, 2002, Rosario entered into a written agreement with Jerez to pay her an undesignated share of the licensee's profits as her only compensation for operating and managing appellant's business. For the 2002-2003, 2003-2004 and 2004-2005 licensed terms, appellant indicated that Jerez ran the day-to-day operations at the licensed premises. Appellant, however, did not amend the negative answer to Question 9.3.
In a recorded statement to the investigating officer, Jerez described Rosario as her "partner" and disclosed her compensation arrangement. Jerez further stated she made all of the purchases for the bar *621 and general operating decisions. She claimed the bar would not operate if she were not there because of Rosario's unavailability due to other business commitments.[2]
Jerez testified that she opened and closed the club during general business hours. She purchased beer, liquor and other supplies for the business, explaining that sometimes she used her own money or credit to make the purchases and would then be reimbursed by the business. Any profits would be divided equally between herself and Rosario.
Rosario testified that Jerez was responsible for the payment of in-bar expenses and he was responsible for other payments, such as utilities and taxes, and that they each had separate checkbooks. Rosario claimed he checked on the business once or twice a week and also called Jerez for periodic updates. Rosario admitted he relied heavily on Jerez to operate the bar, trusted Jerez and accepted her word as to the weekly profits, and never questioned her claims for reimbursement of business expenditures. Rosario further stated he shared the business profits with Jerez "50-50 and sometimes more" if he believed her share was insufficient or he felt her work for the week merited additional pay. His concern was not with the income he received, but in keeping Jerez happy so she would continue to run the bar and he could maintain the liquor license.
Rosario testified that Jerez was strictly the manager who was paid from the profits based on the July 2002 agreement, and was not a partner in the business. He believed the salary arrangement did not violate any ABC regulation as all business documents identified him as a sole shareholder and any reference to Jerez consistently identified her as the manager of the business.
The ALJ rendered an initial decision on June 16, 2006, sustaining the charges of failure to maintain or produce books of account and failure to display the warning poster. However, he reversed the municipality's finding of violations of the two charges under N.J.S.A. 33:1-25, i.e., undisclosed person with interest and failure to disclose a material fact on a license application. The ALJ determined there was no factual dispute as to Jerez's management, purchases and salary arrangement of the club on behalf of the licensee. He concluded, however, that although she used the term "partner" as referring to a collaboration in the business effort, Jerez was not a partner of the corporate licensee in the legal sense because she did not bear a risk of loss or have an ownership interest. Further noting that employee profit-sharing is permissible in other types of businesses, the ALJ found no basis to conclude that a similar arrangement was illegal merely because of the involvement of a liquor license.
In a final conclusion and order of June 19, 2006, the Director affirmed the ALJ's finding that Fayette failed to display the warning poster and failed to maintain and produce business records.[3] He held, however, that by sharing in the profits of the business and by handling all aspects of the business on a day-to-day basis without oversight from the corporate owner, Jerez exercised an impermissible undisclosed beneficial interest over the liquor license and that appellant failed to disclose Jerez's interest in the license application. Concluding appellant's conduct and activity *622 were in direct contravention of N.J.S.A. 33:1-26 and N.J.S.A. 33:1-25, and the case law, the Director reversed the ALJ's finding in favor of appellant on the undisclosed interest violations. The Director affirmed Perth Amboy's 136-day suspension of appellant's liquor license, and recognizing "the fact that an undisclosed party was presently operating and sharing in the profits of the business," the Director additionally required the licensee to "take measure to correct this continuing violation immediately." He ordered:
[T]he license will be suspended for the balance of its term, and any renewal thereof which may be granted, with leave granted to the licensee or any bona fide transferee of the license, to apply to the Director, by verified petition, for the lifting of said suspension, whenever the unlawful situation has been corrected, but, such lifting of the suspension shall not be granted, in any event, sooner than 136-days from the commencement of the suspension herein.
The Director denied appellant's request for a stay of its decision. We granted a stay pending appeal by order of January 3, 2007, which we now vacate.

II
On appeal, Fayette asserts it did not violate N.J.S.A. 33:1-25, which simply requires a corporate licensee to list all stockholders, by failing to list an employee whose compensation is based on the business' net income. Appellant argues the ABC misinterpreted and misapplied the statute when it determined that participation in profit-sharing as contractual compensation automatically converted Jerez, an employee of the business who did not own any shares, into an undisclosed stockholder. In support of its position, appellant relies on Bloom v. Clara Maass Med. Ctr., 295 N.J.Super. 594, 611, 685 A.2d 966 (App.Div.1996), in which we held the fact that physicians shared in profits and were involved in decisions regarding the medical practice did not establish they were equity owners in the corporation or partners.
Appellant further argues that an employee may share in the profits derived from a liquor license, even when that employee is not a shareholder of the licensee. Appellant emphasizes that N.J.S.A. 33:1-25 does not mention the term "undisclosed interest," nor does it contain a prohibition against employee profit-sharing. Relying on the New Jersey Corporations Act, which allows corporations to include employees in profit-sharing without giving them shares in the business, N.J.S.A. 14A:8-1(1)(b), and the common practice in many businesses of giving managers profit-sharing as compensation as an incentive to increase profits, appellant insists there is no reason to apply a different standard in the liquor industry, particularly in the absence of an express statutory proscription.
Appellant also contends there was no credible evidence that Jerez was its true owner or a "front" for an undisclosed beneficial interest in the liquor license. According to appellant, Rosario was undisputedly the person controlling the licensee corporation, while Jerez simply managed the bar, with no ownership interest or any final decision-making authority outside of that possessed by a typical business manager.

III
In interpreting a statute, our Supreme Court has repeatedly emphasized that our overriding goal must be to determine and give effect to the Legislature's intent. Richardson v. Bd. of Trs., Police & Firemen's Retirement Sys., 192 N.J. 189, 196, *623 927 A.2d 543 (2007); Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 231, 708 A.2d 401 (1998). Courts generally "`give substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.'" R & R Mktg., L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175, 729 A.2d 1 (1999) (quoting Smith v. Dir., Div. of Taxation, 108 N.J. 19, 25, 527 A.2d 843 (1987)).
The express public policy of the Alcoholic Beverage Control Act (Act) is "`[t]o strictly regulate alcoholic beverages to protect the health, safety and welfare of the people of this State. . . .'" Div. of Alcoholic Beverage Control v. Maynards, Inc., 192 N.J. 158, 175, 927 A.2d 525 (2007) (quoting N.J.S.A. 33:1-3.1(b)(1)). The Act
squarely places on the Director of the State ABC "the duty . . . to supervise the manufacture, distribution and sale of alcoholic beverages in such a manner as to fulfill the public policy and legislative purposes of this act [,]" N.J.S.A. 33:1-3, [and] [i]t vests in the Director the broad authority "to make such general rules and regulations and such special rulings and findings as may be necessary for the proper regulation and control of the manufacture, sale and distribution of alcoholic beverages and the enforcement of this [Act.]" N.J.S.A. 33:1-39.
[Id. at 176, 927 A.2d 525.]
Our deference encompasses policy determinations of the Director of the ABC "because the power to regulate the sale of intoxicating liquors is `practically limitless.'" Id. at 176, 729 A.2d 1 (quoting Joseph H. Reinfeld, Inc. v. Schieffelin & Co., 94 N.J. 400, 412, 466 A.2d 563 (1983)). See N.J.S.A. 33:1-12.40a (stating the "retail alcoholic beverage industry is one of the most highly regulated industries in the State"); Blanck v. Mayor and Borough Council of Magnolia, 38 N.J. 484, 490, 185 A.2d 862 (1962) ("The right, most extensive in nature, to regulate the field of intoxicating liquors is within the police power of the State. . . ."); In re Olympic, Inc., 49 N.J.Super. 299, 306, 139 A.2d 768 (App.Div.) (noting the police power to regulate the sale of intoxicating liquors has "uniformly been accorded liberal judicial support"), certif. denied, 27 N.J. 279, 142 A.2d 262 (1958).
As we noted in In re Club "D" Lane, Inc., 112 N.J.Super. 577, 579, 272 A.2d 302 (App.Div.l971):
A license to sell intoxicating liquor is not a contract nor is it a property right. Rather, it is a temporary permit or privilege to pursue an occupation which is otherwise illegal. Since it is a business attended with danger to the community, it may be entirely prohibited or be permitted under such conditions as will limit to the utmost its evils. Mazza v. Cavicchia, 15 N.J. 498, 505, 105 A.2d 545 (1954).
"The regulation and sale of alcoholic beverages, requiring as it does intense regulation, is considered on a narrower basis than other commercial enterprises." G & J.K. Ent. v. Div. of Alcoholic Beverage Control, 205 N.J.Super. 77, 82, 500 A.2d 43 (App.Div.1985). Our courts have long recognized the sui generis character of the liquor trade, which from the earliest history of our State has been treated in an exceptional manner by the Legislature. In re Olympic, Inc., supra, 49 N.J.Super. at 306, 139 A.2d 768. See also In re Disciplinary Proceedings Against Schmidt, 79 N.J. 344, 353, 399 A.2d 637 (1979) ("The liquor business, because of its susceptibility to inherent evils, has always been dealt with as a subject apart."); Mazza v. Cavicchia, supra, 15 N.J. at 505, 105 A.2d 545 (stating the sale of intoxicating liquors "`is a subject by itself, to the treatment of which all the analogies of the law *624 appropriate to other topics cannot be applied.'") (quoting Paul v. Gloucester County, 50 N.J.L. 585, 595, 15 A. 272 (E. & A. 1888)).

IV
We are not persuaded by appellant's arguments. Appellant was found guilty by the municipality and regulatory agency of violating two counts of N.J.S.A. 33:1-25. The second of these charges (Count Four) pertained to failing to disclose, or providing a false, misleading or inaccurate answer to a statement on the liquor license application, and resulted in a forty-five-day suspension.
N.J.S.A. 33:1-25 provides, in pertinent part:
Applicants for licenses shall answer questions as may be asked and make declarations as may be required by the form of application for license as may be promulgated by the director from time to time. All applications shall be duly sworn to by each of the applicants. . . . All statements in the applications required to be made by law or by rules and regulations shall be deemed material, and any person who shall knowingly misstate any material fact, under oath, in the application shall be guilty of a misdemeanor. Fraud, misrepresentation, false statements, misleading statements, evasions or suppression of material facts in the securing of a license are grounds for suspension or revocation of the license.
Any arguments appellant has to Jerez's non-shareholder status in the licensee corporation are irrelevant to this charge. Question 9.3 of the liquor license application unambiguously requires disclosure of "anyone not having an ownership interest in the license [who] receive[s] . . . (by way of rent, salary, or otherwise) all or any percentage of the gross receipts or net profit or income derived from the business to be conducted under the license. . . ." Appellant expressly answered Question 9.3 in the negative in its application filed on June 6, 2000. Appellant filed its 2002-2003 renewal application in May 2002, and on August 13, 2002, subsequent to the July 1, 2002 contract with Jerez, it submitted an amendment. Appellant admits it failed to amend its answer to Question 9.3 and disclose Jerez's profit-sharing interest at that time, nor do so in any of its subsequent annual renewal applications. See N.J.A.C. 13:2-2.14 (requiring a licensee to file an amendment regarding any change to its current license application not more than ten days after the change occurs).
In the annual short-form renewal applications beginning in 2003, Rosario certified that information contained in the most recent full application on file as updated or amended was true and accurate. Clearly, the information appellant had provided the ABC in response to Question 9.3 was false in view of Jerez's July 2002 contract and the undisputed ensuing practice of paying Jerez, a non-shareholder, a percentage of the business profits as compensation for managing the bar. As such, the record supports the Director's finding of a violation in appellant's failing to disclose a material fact in its application or providing false, misleading or inaccurate information.
We are also satisfied there is ample basis in law and fact to support the Director's conclusion that Jerez held an impermissible undisclosed interest in appellant's liquor license, the other N.J.S.A. 33:1-25 charge (Count Two). The Director acted within his broad discretionary power to regulate conduct adversely affecting the operation and control of a licensed facility in the heavily-regulated liquor industry, which traditionally has been treated differently and more restrictively *625 than other types of businesses. Moreover, the Director's ruling has an implicit statutory basis and is consistent with numerous published agency decisions supporting the well-recognized prohibition against undisclosed interests in liquor licenses.[4]
Appellant mischaracterizes the Director's decision. The Director did not conclude that mere participation in profit sharing converts an employee into a stockholder in the legal sense of the term. Rather, the Director's conclusion is that someone who is not a stockholder in a licensee corporation is not entitled to share in the benefits of ownership, which includes control over operation of the license and sharing in the profits from the sale of alcohol. Presumably, that was the logic behind the Director's promulgation of Question 9.3 as part of the liquor license application.[5]See In re MS & W Distributors, Inc., A.B.C. Bull. 2404, Item 1 (May 29, 1980) (stating that one incident of ownership of a liquor license is "the privilege to operate, without interference or control of third parties, a liquor licensed facility and receive the profits therefrom."); see also Alcoholic Beverage Control v. Jayson, Inc., 96 N.J.A.R.2d (ABC) 72, 75 (1996) (noting that only a holder of a New Jersey liquor license can receive the proceeds from the sale of alcoholic beverages).[6] The regulatory agency has determined such non-owner holds an undisclosed beneficial interest in the liquor license, even if such person would not otherwise be disqualified; that interest is impermissible and constitutes a continuing violation of the grant of the license. Therefore, in addition to a thirty-day license suspension for this violation, the remedial action implicitly required in this case is for the licensee corporation to grant Jerez an ownership interest or, at a minimum, to modify her employment compensation to delete any profit-sharing, and thereafter for Rosario to begin properly overseeing operation of the licensed premises.
The New Jersey Corporations Act merely allows corporations to include employees in profit-sharing but does not make profit sharing mandatory for all corporations. See N.J.S.A. 14A:8-1(1)(b) ("A corporation may establish . . . [p]lans providing for . . . profit-sharing. . . ."). That profit-sharing by non-stockholders is a permissible, and perhaps even prevalent financial arrangement in many other types of business, is irrelevant to whether it is an acceptable practice in the heavily-regulated alcoholic beverage industry. The Director, within his broad regulatory power and discretion, has consistently determined *626 the Act prohibits this type of business arrangement.
We do not believe the Director is limited to the literal reading of N.J.S.A. 33:1-25 suggested by appellant. While appellant is correct that N.J.S.A. 33:1-25 does not expressly include the term "undisclosed interest,"[7] the ABC has long recognized the concept as within its intendment, as the Director indicated in his final conclusion and order:
An undisclosed interest goes by several different names in this industry. Sometimes it is referred to as a "front." Sometimes it is referred to as a "farm out." Sometimes it is referred to as a "lease out." Sometimes it is referred to as an "indirect interest." However, at all times, the indicia of an undisclosed interest are the indicia of ownership that require disclosure under N.J.S.A. 33:1-26 and N.J.S.A. 33:1-25. By its very nature, the characteristics of an undisclosed interest are concealment and subterfuge.
The ABC's decisions prohibiting undisclosed interests in licenses derive from the concept, implicit in N.J.S.A. 33:1-26, that a liquor license in New Jersey must be free "from any device which would subject it to the control of persons other than the licensee." The Boss Co., Inc. v. Bd. of Comm'rs of Atlantic City, 40 N.J. 379, 388, 192 A.2d 584 (1963). The Director has consistently relied on the following sentence from N.J.S.A. 33:1-26, which has been part of the Act since 1933, as the statutory source of the prohibition against a non-owner having a beneficial interest in a liquor license:
Any person who shall exercise or attempt to exercise, or hold himself out as authorized to exercise, the rights and privileges of a licensee except the licensee and then only with respect to the licensed premises, shall be guilty of a misdemeanor.
It is evident from the agency's decisions that it has had a longstanding policy of reading the "control" provisions of the Act, N.J.S.A. 33:1-25 and -26, in pari materia, construing N.J.S.A. 33:1-26 as giving rise to the disclosure requirements in N.J.S.A. 33:1-25, and creating the "undisclosed person with a beneficial interest" charge of N.J.S.A. 33:1-25.
The Director has repeatedly advanced the policy that a liquor license must be within the supervision and control of the registered licensee. In Cunninghame v. Borough Council of the Borough of Sea Girt, 97 N.J.A.R.2d (ABC) 63 (1997), the Director reiterated the principle that the holder of a liquor license cannot allow another person to use the license or turn over control of the license to an individual with no interest in the license. The Director found an agreement between a licensee and a lessee operating in the licensed premises a luncheonette business that sells liquor to be an illegal "lease out" of the license, and thus violative of *627 N.J.S.A. 33:1-25 and N.J.S.A. 33:1-26 as an undisclosed interest in the license. The Director reasoned:
The effect of N.J.S.A. 33:1-25 and N.J.S.A. 33:1-26 is to prohibit any person from having an undisclosed interest in the license and from otherwise exercising control of the license. N.J.A.C. 13:2-23.28 implicitly indicates that a licensee may personally operate the licensed premises or may delegate that responsibility to an agent, servant or employee.
The issue in the present matter is whether [the luncheonette owner] is the agent, servant or employee of the licensee. The reverse of this issue is whether the licensee has turned over control of the license to [the luncheonette owner].
[Cunninghame, supra, 97 N.J.A.R.2d (ABC) at 66.]
The Director was satisfied that rather than being an agent, servant or employee of the licensee, the luncheonette owner's actions went beyond the scope of a normal employee or manager. Id. at 69. In concluding that the licensee impermissibly had turned over control of the license to the luncheonette owner, the Director focused on the following indicia: the licensee's lack of involvement in any portion of the day-to-day operations of the licensed premises, including any sales of alcoholic beverages; no evidence of direct control of supervision by the licensee; and a financial arrangement apparently allowing the luncheonette owner to operate the license and keep the profits from the sale of alcoholic beverages. Id. at 66, 69.
In Doc Cross, Inc. v. Township Council of the Township of Hamilton, 96 N.J.A.R.2d (ABC) 60 (March 11, 1996), the Director also found an option agreement resulted in an impermissible undisclosed interest in the license because it permitted the option holder, an unlicensed entity, to direct the sale of the license and receive profits from such sale. Contained in the opinion are examples of impermissible undisclosed interests, many of which closely resemble the situation in the present case:
"It is illegal to act as a `front' for an undisclosed beneficial interest in a liquor license by knowingly aiding or abetting another in circumventing the licensing requirements, N.J.S.A. 33:1-52, or by failing to disclose the true ownership of an application for a liquor license." Division of Alcoholic Beverage Control v. Five H. Liquors, Inc., OAL Dkt. No. ABC 8155-90 (April 11, 1991). Indicia of a front include: a licensee's lack of knowledge regarding the financial affairs of its business, In re J.P.S., Inc., A.B.C. Bulletin No. 2229, Item 1 (June 9, 1976); the purchase of a license using commingled funds [and the wife sharing the profits thereof in the joint enterprise with her criminally disqualified husband], In re Five Points Liquor Store, Inc., A.B.C. Bulletin No. 2149, Item 5 (April 26, 1974), or funds contributed by a spouse, In re Lopresti, A.B.C. Bulletin No. 2100, Item 6 (April 6, 1973); authorization of a non-licensee to pay bills, sign checks and retain profits, In re Jimmy McGriff's Golden Slipper, Inc., A.B.C. Bulletin No. 2109, Item 3 (May 30, 1973); holding oneself out to the public as the owner, In re Gallo, A.B.C. Bulletin No. 2284, Item 1 (January 4, 1978); a husband authorized to withdraw business funds, In re Beresci, A.B.C. Bulletin No. 2117, Item 2 (July 25, 1973); the licensee visiting the premises once a month, having no knowledge of the business, and receiving no salary, In re Tully, A.B.C. Bulletin No. 2264, Item 1 (April 11, 1977); or apparent control by an undisclosed party, Sharp's Lodge, *628 Inc. v. Lakewood, A.B.C. Bulletin No. 1842, Item 1 (January 23, 1969).
[Id. at 64-65.]
The Director cited several of these cases in the opinion that is the subject of this appeal, additionally noting that undisclosed interests have been found to exist where the licensee has permitted a non-shareholder to operate the business and retain the profits and income of that licensed business. In re Spilled, Inc., A.B.C. Bull. 2262, Item 3 (April 6, 1977); In re Big Eddie's Bar and Tavern, Inc., A.B.C. Bull. 2239, Item 3 (September 3, 1976). He concluded that, consistent with the case law and the unique requirements of the Act, "if a licensee allows a person to share in the profits of the business, that person is receiving and enjoying a prohibited undisclosed interest in the license."
The Director noted similarities between the present case and Berencsi, supra, A.B.C. Bull. 2117, in which the manager was found to be an undisclosed interest, concluding it "mirrored" the situation with Rosario and Jerez. In Berencsi, the licensee entered into an agreement to allow a third party to manage the licensed tavern. No true books of account were kept until after the investigation commenced. There was intermingling of funds belonging to the manager and the licensed entity and the manager used business funds to pay for personal debts. The manager essentially exercised full operation over the business, including ordering and payment of bills. Also, the manager received compensation based upon a percentage of the business profits.
In the present case, Jerez admitted control over virtually every aspect of the day-to-day management and operation of the licensed facility  opening and closing the business each day, handling all receipts and disbursements, making general operating decisions, making all entries into the books of account, and using personal funds or credit to purchase liquor or supplies for the business. She acknowledged Rosario's unavailability due to other business commitments; he testified he only checks on the business once or twice a week. Rosario admitted to relying heavily on Jerez regarding the operation of the business, accepting her word as to weekly profits and never questioning her claims for reimbursement of business expenses. Jerez referred to Rosario as her "partner," her July 1, 2002 written agreement provided for compensation by profit-sharing, and both she and Rosario testified they have shared all business profits at least "50-50" since that time. Based on Jerez's profit-sharing in the licensed premises, over which she exercised a large degree of unsupervised control, the Director found that Jerez, a non-shareholder, held an impermissible undisclosed interest over the liquor license, in contravention of N.J.S.A. 33:1-26 and N.J.S.A. 33:1-25.
The Director's determination has a firm statutory and regulatory basis and is consistent with the interpretation that the ABC has given to the Act. We are satisfied the Director's ruling is amply supported by the law and the facts of the case.
We affirm. The stay previously entered is vacated.
NOTES
[1] Although the licensed premises appear to be known as Club 41, the licensing documents all indicate the trade name is Fayette Fair Trade, Inc.
[2] Rosario operated an auto repair shop and had three to five rental properties, which consumed much of his time.
[3] These violations are not implicated in this appeal.
[4] We have recognized the use of contested case agency decisions, reported in ABC Bulletins that are disseminated by the agency to the regulated community pursuant to N.J.S.A. 33:1-39, as precedent, which is available to any licensee. G & J.K. Ent. v. Div. of Alcoholic Beverage Control, 205 N.J.Super. 77, 84-85, 500 A.2d 43 (App.Div.1985).
[5] It appears this question, originally designated Question 31 on the application for municipal retail liquor licenses, was promulgated in A.B.C. Bulletin 996 dated January 4, 1954. See Attorney General's Formal Opinion 1964  No. 3, A.B.C. Bull. l564, Item 2 (May 6, 1964).
[6] The only exception to the prohibition against a non-licensee sharing in profits appears to be a lease based on a percentage of the gross sales. However, this exception is only permitted "where the agreement represents solely a reasonable method of compensating the landlord for the use of the premises [and not] a device whereby the landlord can also derive benefits equivalent to a participation in the business conducted therein." Thus, a landlord who is permitted to receive a percentage of gross sales, which the Division has generally held cannot exceed 6% of the gross receipts, may not exercise control over the tenant's liquor license. Attorney General's Formal Opinion 1964  No. 3, supra.
[7] N.J.S.A. 33:1-25 provides, in pertinent part:

In applications by corporations, except for club licenses, the names and addresses of and the amount of stock held by, all stockholders holding 1% or more of any of the stock thereof, and the names and addresses of all officers and of all members of the board of directors must be stated in the application, and if one or more of the officers or members of the board of directors or one or more of the owners, directly or indirectly, of more than 10% of the stock would fail to qualify as an individual applicant in all respects, no license of any class shall be granted.
. . . .
In applications by partnerships, the application shall contain the names and addresses of all the partners. No license shall be issued unless all of the partners would qualify as individual applicants.