957 A.2d 691 (2008)
403 N.J. Super. 98
ZAGAMI, LLC, d/b/a The Landmark Americana Tap and Grill, d/b/a Landmark Liquors, Plaintiff-Respondent,
v.
Mary Ann COTTRELL and Luis Perez, Defendants-Appellants.
Nos. A-3948-07T3, A-4227-07T3.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2008.
Decided October 3, 2008.
*692 Wesley G. Hanna, West Berlin, argued the cause for appellant, Mary Ann Cottrell (Friedman Doherty LLC, attorneys; Mr. Hanna, on the brief).
Joel Wayne Garber, Voorhees, argued the cause for appellant, Luis Perez (Garber Law, PC, attorneys; Mr. Garber, on the brief).
Alan A. Reuter, Stratford, argued the cause for respondent, Zagami, LLC (Nash Law Firm LLC, attorneys; Mr. Reuter, on the brief).
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
In these back-to-back matters summarily remanded to us from the Supreme Court's grant of leave to appeal, we are asked to decide whether defendants in a defamation action are accorded absolute immunity for statements they made in connection with a municipal liquor license renewal proceeding. We hold that under the circumstances of this case, defendants are entitled to assert the litigation privilege and, therefore, to dismissal of plaintiff's complaint with prejudice.
By way of background, plaintiff Zagami, LLC (Zagami) is a limited liability company that owns a restaurant, bar and grill *693 (Landmark Americana), liquor store (Landmark Liquors), and night club (The Spot), operating out of the same facility at 1 Mullica Hill Road in the Borough of Glassboro. The facility is located near Rowan University's campus, as well as a residential neighborhood where defendants Mary Ann Cottrell and Luis Perez live. In fact, Perez lives across the street from plaintiff's establishment.
As a retail dispenser of alcoholic beverages, plaintiff is a regulated entity subject to State supervision and municipal licensure under the New Jersey Alcoholic Beverage Control Act (Act), N.J.S.A. 33:1-1 to -97. See, e.g., N.J.S.A. 33:1-3; N.J.S.A. 33:1-12. As such, plaintiff is the holder of a plenary retail consumption license issued by the Borough of Glassboro, which is a Faulkner Act community governed by a mayor-council form of government. Sometime in 2006, plaintiff applied for renewal of its liquor license for 2006-2007. Voicing their objections, on June 9, 2006, defendants wrote to the Borough Council requesting to be heard on plaintiff's application. On June 16, 2006, the Borough solicitor, pursuant to N.J.A.C. 13:2-7.5, provided defendants and plaintiff written notice of the time and place for the scheduled hearing, inviting them to testify and further explaining that the purpose of the hearing was to "tak[e] ... testimony and/or [receive] other evidence with respect to written objections to the renewal of the existing liquor licenses held by Landmark Tap and Grill/Landmark Liquors...."
Following publication of notice, a license renewal hearing was held on June 27, 2006, presided over by the mayor. The Borough solicitor was present as was plaintiff's attorney. The hearing was recorded[1]. During the hearing, defendants aired a variety of complaints concerning plaintiff's operation, focusing mainly on violations of the municipal fire code, alcoholic beverage control (ABC) regulations, and the criminal laws. As to the latter two, defendants claimed that plaintiff, among other things, served minors and intoxicated individuals; ran a "go-go bar"; failed to display maximum occupying limits; aided and abetted assaults and batteries by its bouncers and other employees; and bribed public officials with free meals and drinks. When asked if they wished to enter any documents or reports into the record, defendants declined. Plaintiff's attorney was given the opportunity to respond, and he disputed the allegations made by defendants. Afterwards, the Borough Council passed a resolution authorizing renewal of plaintiff's retail consumption license. Pursuant to N.J.A.C. 13:2-17.1, on September 14, 2006, defendants filed an appeal with the New Jersey Division of Alcoholic Beverage Control, and the matter was transmitted to the Office of Administrative Law, where it proceeded through the normal course.
On June 26, 2007, on the eve of the one-year anniversary of its liquor license renewal, plaintiff filed a complaint against defendants, alleging defamation and the related torts of commercial disparagement/trade libel, interference with business relations and civil conspiracy. The complaint detailed statements made by defendants in their June 9, 2006 written objection, June 27, 2006 hearing, and September 14, 2006 appeal that plaintiff claimed to be both false and maliciously uttered. Defendants moved to dismiss, maintaining that their statements were made in the course of a quasi-judicial proceeding *694 and therefore immune from a civil damage action, shielded by the absolute litigation privilege. Although the ensuing oral argument on defendants' motions seemed to properly focus on whether sufficient safeguards attended the municipal proceeding for the privilege to attach, the Law Division judge ultimately denied the motion as premature, pointing to factual issues surrounding defendants' mental states at the time the alleged defamatory statements were uttered. Following our denial, the Supreme Court granted defendants' motions for leave to appeal and summarily remanded the matters to us for consideration on the merits.
As a threshold matter, the present state of the law of libel and defamation recognizes the delicate balance between guaranteeing constitutionally-protected free speech on the one hand and protecting an individual's reputational interest on the other. Dairy Stores, Inc. v. Sentinel Publishing Co., 104 N.J. 125, 135-36, 516 A.2d 220 (1986). But, as Judge Pressler noted, "[t]hat accommodation must be heavily weighted in favor of the right of free speech when its subject is a matter of public concern reasonably invoking public debate." LoBiondo v. Schwartz, 323 N.J.Super. 391, 407, 733 A.2d 516 (App. Div.1999). Consequently, our common law recognizes that some otherwise defamatory statements should be "privileged," that is, immune from liability and not actionable. Dairy Stores, Inc., supra, 104 N.J. at 136, 516 A.2d 220.
Certain statements made in the course of judicial, administrative, or legislative proceedings are absolutely privileged because of "the need for unfettered expression critical to advancing the underlying government interest at stake in those settings." Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 563, 569 A.2d 793 (1990); see also Hawkins v. Harris, 141 N.J. 207, 213, 661 A.2d 284 (1995); Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 558, 117 A.2d 889 (1955). One purpose is to encourage open channels of communication and the presentation of evidence in judicial proceedings, which is a fundamental adjunct of the right of access to such proceedings. Hawkins, supra, 141 N.J. at 216-17, 661 A.2d 284. Our adherence to the doctrine of "litigation immunity" has been explained thus:
The doctrine that an absolute immunity exists in respect of statements, even those defamatory and malicious, made in the course of proceedings before a court of justice, and having some relation thereto, is a principle firmly established, and is responsive to the supervening public policy that persons in such circumstances be permitted to speak and write freely without the restraint of fear of an ensuing defamation action, this sense of freedom being indispensable to the due administration of justice.
[Fenning v. S.G. Holding Corp., 47 N.J.Super. 110, 117, 135 A.2d 346 (App. Div.1957) (citations omitted).]
Although the English rule of immunity, from whence our doctrine derives, "affords a true, absolute privilege without regard to the relevancy of the statements to the subject matter of the proceedings[,]" New Jersey, like the majority of American jurisdictions, requires that the "defamatory matter uttered have some relation to the nature of the proceedings." Hawkins, supra, 141 N.J. at 215, 661 A.2d 284 (citation omitted). This, however, is the only qualification to the rule of absolute immunity. Otherwise it extends to witnesses, parties and their representatives, as well as other participants in such proceedings, id. at 214-15, 661 A.2d 284, and insulates the defamer not only from a defamation action but, as well, from other related tort counts whose gravamen is the same as that *695 of the defamation claim. Rainier's Dairies, supra, 19 N.J. at 555, 117 A.2d 889; LoBiondo, supra, 323 N.J.Super. at 417, 733 A.2d 516.
Likewise, the litigation privilege has been expanded beyond strictly judicial proceedings to encompass so-called "quasi-judicial" proceedings as well. Hawkins, supra, 141 N.J. at 216, 661 A.2d 284. In Rainier's Dairies, supra, the Court extended the absolute privilege to an administrative licensing hearing before the State Office of Milk Industry on a milk wholesaler's (Raritan's) verified petition charging illegal arrangements between its dealer-customer and a competing wholesaler (Rainier), and seeking revocation of the competitor's license as well as denial of the dealer's application to transfer its source of supply from the petitioner to the competitor. 19 N.J. at 563, 117 A.2d 889. The Court explained its reasoning in applying the absolute privilege:
[I]n strictly judicial proceedings the potential harm which may result from the absolute privilege is somewhat mitigated by the formal requirements such as notice and hearing, the comprehensive control exercised by the trial judge whose action is reviewable on appeal, and the availability of retarding influences such as false swearing and perjury prosecutions.... But where ... the administrative proceeding was actually conducted in a manner and with safeguards similar to a judicial proceeding and dealt with issues of significant public concern there would, under this or any other plausible view, be no basis for refusing to invoke the doctrine of absolute privilege or immunity to the same extent that it would be applicable in court proceedings.

[Id. at 562, 117 A.2d 889 (emphasis added) (internal citations omitted).]
Recognizing that the line between judicial and "quasi-judicial" may sometimes be indistinct, and because of the extraordinary scope of the privilege, the Court limited its application to those administrative proceedings with attendant safeguards similar to those in strictly judicial proceedings and identified them as notice and hearing; neutral oversight; availability of review on appeal; and presence of "retarding influences." Id. at 562, 117 A.2d 889. Finding these criteria present in the licensing proceeding before the Director of the Office of Milk Industry, which "was not merely designed to determine private issues between private parties but was primarily designed to ascertain whether important departmental regulations which were promulgated in the public interest were being violated[,]" the Court dismissed Rainier's subsequent defamation action against Raritan, according full protection to the statements published in Raritan's verified petition. Id. at 559-60, 117 A.2d 889. The Court concluded that:
[a]dministrative agencies such as the Office of Milk Industry are now a vital part of American life and perform important public duties; it seems only just that, to the extent they discharge a function comparable to the judicial function, they and the participants in the proceedings before them be vested with a comparable privilege or immunity.
[Id. at 562-63, 117 A.2d 889.]
The absence of any one or more of the conventional safeguards identified in Rainier's, however, is not fatal to the application of the absolute privilege. For example, the privilege is not limited to statements made during trial but has been held to encompass those made in connection with a judicial or quasi-judicial proceeding. In Hawkins, supra, the Court held that statements regarding insurance fraud and subornation of perjury *696 made during pretrial discussions between an injured motorist and private investigators hired by the insurer of the driver against whom a personal injury negligence action was brought were protected by the absolute privilege governing statements made in connection with litigation. 141 N.J. at 216, 661 A.2d 284. The Court reasoned that extension of the privilege in such cases was necessary to promote the development and free exchange of information and to foster judicial and extra-judicial resolution of disputes. Id. at 218, 661 A.2d 284.
Likewise, in Pollinger v. Loigman, 256 N.J.Super. 257, 606 A.2d 1113 (App.Div. 1992), we found that statements made in a report of a background check of a police officer applicant issued to the appointing authority (a township police chief and administrator) to assist them in determining the applicant's fitness for a civil service appointment were absolutely privileged, because the report was part of a quasi-judicial proceeding entailing exercise of an adjudicative function and requiring notice and opportunity to be heard. Id. at 265, 606 A.2d 1113. On this score, we found the safeguards inhering in the administrative proceeding sufficient to protect the allegedly defamed party from false or malicious charges:
[a] written police evaluation ..., made available to the applicant, can thus be challenged in administrative hearings. Given this narrow scope of publication, this remedy is sufficient to protect the applicant from false or even malicious charges. A civil defamation action is unnecessary to provide plaintiff with remediation in these circumstances.
[Id. at 264, 606 A.2d 1113.]
Thus, "[i]t [is] a requirement that defendant be given notice and an opportunity to be heard, ... [which are] due process protections consonant with a quasi-judicial administrative review." Ibid.
Nor is the privilege limited necessarily to statements made under oath. In neither Hawkins nor Pollinger was it indicated that the defaming parties were under oath. In DeSantis v. Employees Passaic County Welfare Ass'n, 237 N.J.Super. 550, 568 A.2d 565 (App.Div.), certif. denied, 122 N.J. 164, 584 A.2d 231 (1990), a filed letter and statements made at a public hearing before a local legislative advisory commission established to investigate the feasibility of abolishing the county board of social services were held privileged regardless of whether they were given under oath. Id. at 554, 568 A.2d 565. There, the legislative body was engaged in a quasi-judicial determination and the statements were at least tangentially relevant to the proceeding. Ibid. We emphasized that "as long as the allegedly defamatory matter would not have been published except to inform the legislative body, and the material is relevant to the legislative proceeding, the privilege attaches regardless of whether the material is solicited or subpoenaed and regardless of whether it is given under oath." Ibid.; accord Restatement (Second) of Torts § 588 comments b, c (1976).
Contrary to plaintiff's intimation, application of the litigation privilege outside the strictly judicial sphere is not limited to administrative proceedings at the State level. Indeed, Pollinger involved a municipal appointing authority and DeSantis, a local legislative commission. And in Fenning, supra, we applied the absolute privilege to a quasi-judicial administrative proceeding before a county rent control authority to immunize from civil liability a landlord who filed with the local agency a letter accusing a tenant objecting to a rent increase of "unworthy and corrupt motives" in presenting false evidence to the agency. Id. at 119, 135 A.2d 346. *697 See also In the Matter of Hearing on Immunity for Ethics Complainants, 96 N.J. 669, 477 A.2d 339 (1984) (upholding absolute immunity from libel suit under Rule 1:20-11(b) for testimony or communications given or made in connection with fee arbitration or ethics proceedings); Friedland v. Podhoretz, 174 N.J.Super. 73, 89, 415 A.2d 381 (Law Div.1980) (complaint filed with attorney ethics committee absolutely privileged in libel case); Hill Homeowners Ass'n v. Zoning Bd. of Adj. of Passaic, 129 N.J.Super. 170, 179, 322 A.2d 501 (Law Div.1974) (pertinent statements made by objector before zoning board absolutely privileged), aff'd, 134 N.J.Super. 107, 338 A.2d 824 (App.Div. 1975). Finally, in J.D. Constr. Corp. v. Isaacs, 51 N.J. 263, 239 A.2d 657 (1968), the Court held that absolute immunity may be accorded statements made before a municipal governing body hearing a zoning appeal depending, of course, "on individual circumstances and the ... pertinency and relevancy of remarks or contentions to the questions legitimately before the governing body...." Id. at 271, 239 A.2d 657. However, because the record in Isaacs did not reveal the nature or contents of the alleged defamer's written statement or oral comments, the Court declined to determine the privilege issue in the abstract, therefore reversing the Law Division's dismissal of the plaintiff developer's defamation complaint and remanding for development of a proper record. Id. at 271-72, 239 A.2d 657.
We discern from these cases the guiding principle that, outside the strictly judicial setting, application of the litigation privilege will depend on the nature of the administrative proceeding, the function performed, and the pertinency of the allegedly defamatory statement to the issues and contentions to be resolved. As to the former, we look especially to the organic act governing the administrative agency to determine the presence of such procedural safeguards as notice, hearing, neutrality, finality, and review and to ascertain whether the proceeding affects only purely private interests or is imbued with a greater public significance. Of course whether a defendant in a defamation action is entitled to assert the absolute privilege for statements made during the course of litigation is a question of law. Hawkins, supra, 141 N.J. at 216, 661 A.2d 284.
In applying these criteria to this case, we first note the strong public policy of this State "[t]o strictly regulate alcoholic beverages to protect the health, safety and welfare of the people of this State." N.J.S.A. 33:1-3.1(b)(1). That legislative declaration of public policy makes abundantly clear that "[p]articipation in the industry as a licensee under [The Alcohol Beverage Control Act] shall be deemed a revocable privilege conditioned upon the proper and continued qualification of the licensee." Ibid. See also Div. of Alcoholic Bev. Control v. Maynards, 192 N.J. 158, 175, 927 A.2d 525 (2007); Fayette Fair Trade, Inc. v. Governing Body of City of Perth Amboy, 395 N.J.Super. 453, 929 A.2d 618 (App.Div.2007). Indeed, a licensee's continuing fitness is a precondition to renewal of its ABC license by the local issuing authority. N.J.S.A. 33:1-12.13.
To this end, the Director of the State Division of ABC, in whom broad authority has been vested to "make such general rules ... for the proper regulation and control of ... alcoholic beverages ...", N.J.S.A. 33:1-39, has adopted regulations that comprehensively set forth procedures and standards for the renewal of municipal ABC licenses. See generally N.J.A.C. 13:2-2.6 to 2.11; N.J.A.C. 13:2-17.1. Specifically, notices of applications for renewal of municipal licenses are published. N.J.A.C. 13:2-2.6. Upon receipt of a timely *698 written objection, a hearing is scheduled and all parties are notified of the time and place thereof. N.J.A.C. 13:2-2.7. Prior thereto, the issuing authority conducts its own thorough investigation of the applicant's credentials. N.J.A.C. 13:2-2.9(a). The ensuing hearing is either stenographically or electronically recorded. N.J.A.C. 13:2-2.7. Although the hearing need not be of the evidentiary or trial type, where adversarial, the applicant is afforded an opportunity to be heard. N.J.A.C. 13:2-2.9(c). Indeed, the applicant bears the burden of establishing its qualification for renewal of its license. Ibid.
The renewal of liquor licenses, as with their initial issuance, rests in the sound discretion of the issuing authority. Biscamp v. Township Council of Teaneck Tp., 5 N.J.Super. 172, 174, 68 A.2d 540 (App. Div.1949). This discretion, however, is not unbounded. Thus, while N.J.S.A. 33:1-23 requires the stringent and comprehensive administration of the alcoholic beverage laws, the statute also mandates that the Director "ensure that the administration of the law is `fair' and `impartial.'" Ibid.; see also In re Application of Virgo's, Inc., 355 N.J.Super. 590, 596, 810 A.2d 1175 (App.Div.2002). It is therefore also the strong public policy of this State that, in the administration of its ABC laws, "the appearance of objectivity and impartiality as well as their actuality be maintained." Paitakis v. City Council of New Brunswick, 126 N.J.Super. 233, 237, 313 A.2d 804 (App.Div.1974). Thus, "in every action adverse to any applicant or objector, the issuing authority shall state the reasons therefor." N.J.A.C. 13:2-2.9(c). Moreover, actions of the municipal issuing authority "concerning issuance, denial, renewal, transfer, suspension or revocation of a retail license" are appealable to the Director. N.J.A.C. 13:2-17.1. Pertinent here, the Director has the authority to determine substantial compliance with the license renewal provisions of the ABC laws. In re Application of Virgo's, Inc., supra, 355 N.J.Super. at 593, 810 A.2d 1175.
We are satisfied that in this case there has been substantial compliance with the comprehensive regulatory scheme governing liquor license renewal hearings and, further, that such scheme provides sufficient safeguards by way of notice, hearing, neutrality, finality and review to protect plaintiff from the allegedly false and malicious statements uttered by defendants, and to therefore shield defendants with the cloak of absolute immunity.
The fact that defendants' statements were not made under oath does not render the privilege inapplicable given the adequacy of the other procedural protections extant in this case. In any event, there were other "retarding influences" short of administration of the oath that helped guarantee fairness here. In the first place, both municipal counsel and plaintiff's attorney were present to object. Further, an impartial decision-maker limited defendants' involvement, and plaintiff was given ample opportunity to rebut. Indeed, plaintiff was ultimately granted renewal of its liquor license. Interestingly enough, neither the municipal solicitor nor plaintiff's counsel moved to have the objectors sworn in. See, e.g., N.J.S.A. 41:2-1. We also assume, as a general proposition, the availability of the civil torts of malicious use of process and malicious abuse of process, where it can be shown that a defendant either brought the underlying action maliciously and without probable cause and the plaintiff suffered a "special grievance", Turner v. Wong, 363 N.J.Super. 186, 832 A.2d 340 (App.Div.2003), or had an interior purpose and used the process as a means to coerce or oppress the plaintiff. Tedards v. Auty, 232 N.J.Super. 541, 549, 557 A.2d 1030 (App.Div.1989).
*699 We are further satisfied that allegedly defamatory statements identified in plaintiff's complaint all dealt with the manner in which plaintiff operates its licensed liquor establishment and business and therefore were directly relevant to the core issue of the administrative proceeding, namely plaintiff's continuing fitness to hold a liquor license. And on this score, we are equally convinced that the function performed by the municipal issuing authority, namely license renewal, is quasi-judicial in nature, requiring application by a neutral decision-maker of discreet regulatory standards to disputed claims and final adjudication, subject to higher review.
Lastly, these exists compelling public policy justification for affording defendants here the complete immunity of the litigation privilege. The underlying administrative proceeding affects much more than purely private interests and is imbued with a greater public significance. As noted, in the context of the pervasive regulation of the liquor industry, it has been consistently held that a license to sell intoxicating liquor is neither a contract nor a property right. In other words, licensure is not an entitlement but a privilege, for which one's qualification must be affirmatively demonstrated. Indeed, it is in the public interest to be assured that holders of liquor licenses will abide by the myriad rules and regulations governing their business operations. It would appear, then, that the free and open presentation of relevant evidence concerning a licensee's compliance therewith is critical to any informed determination of the fitness question. As we examine the policy considerations underlying the litigation privilege, it becomes obvious that its extension in the present situation will help promote the development and exchange of information and foster proper resolution of the licensure issue. In our view, this strong public policy concern outweighs any burden on plaintiff's private reputational interest which, in any event, has been substantially mitigated by the procedural safeguards in place and actually deployed in this instance.
Accordingly, we find that the litigation privilege immunizes defendants from plaintiff's defamation claim, which consequently should have been dismissed on defendants' motion. Because the other counts alleging related torts are predicated upon the same conduct on which the defamation claim is based, defendants are shielded from liability for them as well, and, therefore, plaintiff's entire complaint should have been dismissed.
Reversed and remanded for entry of an order dismissing plaintiff's complaint with prejudice.
NOTES
[1] We have been provided a transcript of plaintiff's June 27, 2006 liquor license renewal hearing derived from a tape recording of the hearing that apparently has been destroyed pursuant to the Borough's one-year record retention policy.